## HENWOOD v. MOORE.

### No. 6278.

Court of Civil Appeals of Texas.
Texarkana.

May 22, 1947.

Rehearing Denied June 19, 1947.

Ramey, Calhoun, Marsh, Brelsford & Sheehy of Tyler, Ward & Benson, of Mt. Pleasant, Texas, for appellant.

Jones, Jones & Brian, of Marshall, and Brown & Russell, of Mt. Pleasant, for appellee.

HALL, Chief Justice.

This is a personal-injury damage suit, wherein appellee G. E. Moore, plaintiff below, was awarded a judgment for $35,000 against appellant, Berryman Henwood, Trustee, St. Louis Southwestern Railway Company of Texas, defendant below, for injuries sustained as a result of a collision at night on August 13, 1945, between a train and standing freight cars upon defendant's main line tracks on the outskirts of Mt. Pleasant. Plaintiff, an employee of defendant, the head brakeman on the moving train who was riding the tender at the time either jumped off just prior to the collision or was thrown from the tender onto the ground as a result of the impact.

The jury findings sustained specific acts of alleged negligence, namely: (1) In permitting the main line track, upon which the collision occurred. to be obstructed by

standing cars; (2) violation of a company rule which required and defined restricted speed limits; (3) failure to keep a look out for obstruction on the track; and (4) violation of the safety appliance law as to headlights on locomotives. The jury exonerated plaintiff of all alleged acts of contributory negligence.

As to the act or omission complained of in each ground of recovery above enumerated, and whether or not same was negligence in the several special issues, the defendant objected to each on the ground that the issue was not supported by any evidence. We are not in accord with appellant's position that there was no evidence to warrant the submission of alleged negligence with respect to permitting the main line track to be obstructed by standing cars, and the failure of the engineer and fireman to keep a lookout. In passing upon the position here urged by appellant we feel it to be sufficient to merely point out under the evidence that the string of cars which had been shunted out or spotted upon the main line track had been left there by that train crew unlighted and unattended. The engine crew of the moving train claim they did not see the standing cars until within 6 or 10 car lengths of them. They stopped the moving train within 8 car lengths after the brakes were applied, to make an average good stop. As they approached the point of collision, the track was straight; and they had an unobstructed view for 40 or 50 car lengths. We deem it unnecessary to discuss the complaint urged to the submission of the issues with respect to the alleged violation of the company rule or the violation of the safety appliance law in reference to headlights on locomotives.

In connection with special issue No. 15 in submitting the various elements of damages to be considered the court instructed the jury as follows: "(E) You will not allow any sum of money for the physical pain and mental suffering, if any, either past or future, or loss of earning, if any, in the past or such earnings, if any, as plaintiff G. E. Moore in reasonable probability will lose in the future, because of the diminished capacity to work and earn money in the future, if any, on account of the condition, disease and injuries, if any, which may have existed in G. E. Moore prior to the injuries, if any, received by him on August 13, 1945 except in so far as that condition, injuries and disease, if any, may have been aggravated by the injuries, if any, sustained by plaintiff G. E. Moore on August 13, 1945."

It is to be observed here that the jurors were instructed that they could allow damages for an aggravation of prior injuries. Defendant excepted to the submission of this element of damages on the ground that the evidence did not raise such issue but conclusively showed that the injury plaintiff received August 13, 1945, did not aggravate his prior injuries; and such instruction unduly directs the attention of the jury to the injuries previously sustained and calculated to lead the jury to believe that the injuries received by plaintiff on August 13, 1945, did, or probably did, aggravate the former injuries.

Plaintiff was hospitalized for a week following shrapnel wounds to his knee received by him April 4, 1944, in Italy. He was returned to America on September 1, 1944, suffering from shell shock received by him August 17, 1944. After a period spent in a rest center, he was discharged from the United States army December 7, 1944, "caused (as noted on his discharge papers) by physical condition below the minimum induction standard." A few weeks after plaintiff had been employed by defendant, he was allowed a 50% physical disability compensation by the United States government on his application he had made at the time of his discharge. Monthly benefit payments were paid him under this 50% physical disability award until January, 1946. This award was reduced to a 40% disability compensation in January, 1946, as a result of a later physical examination by the Veterans Administration. The fact that his disability compensation was reduced from 50% to 40% after his injuries received August 13, 1945, would not lend support to any claim that his prior injuries had been aggravated by his subsequent injuries.

The evidence with respect to an aggravation of the previous injuries rests in the testimony given by lay witnesses and in ef-

fect is that plaintiff's nerves which had been affected by the shell shock had gradually improved "up until I got hurt; * * * that at the time he hired out for the railroad, he had gotten his nervous condition under such control, as that it it was hardly noticeable;" and since his injury "he doesn't seem to be able to sit still in the house any length of time, but seems to be better if he can get out and do little things and keep his mind employed." Omitting any observation on the quantum of proof that may be reflected in above brief summary of the medical and lay testimony we are unable to hold that there was not any evidence whatever to support the submission of this element of alleged damages.

Under the 10th point appellant assigns error of the court in overruling appellant's motion for new trial on the ground that the damages awarded by the verdict and judgment was excessive. Plaintiff entered the hospital in an unconscious condition, at which time he was suffering from severe shock and loss of blood. He had received numerous abrasions about the head, a substantial lick on the left side of his head just below the hair line, a gash in his left leg, and as it shortly thereafter developed a severe blow to the right shoulder. He was given several blood transfusions. He remained for a week in an unconscious condition. When he regained consciousness he suffered great physical pain from a swollen upper right arm and shoulder. His head hurt. He had little control of his mouth. His face felt numb. He remained in the hospital for a month, less three days. For several months after receiving his injuries he was unable to lift his right arm higher than on a level parallel with the floor. Through the use of massages and exercises, attendant with pain, he later was able to raise this arm above his head. For quite a while after leaving the hospital he was unable to sleep well and tired easily after trying to work. At the time of the trial the pain in the right arm had quit, but he still continued to suffer with pain in his shoulder, and especially when he raised the right arm above his head. He still suffers and has continued to suffer with a pain in his

head. The hearing in his right ear has been impaired.

The doctors are in accord that plaintiff's injuries had resulted at the time of the trial in an atrophy of the muscles in the right shoulder and upper right arm flowing from some damage to the brachial-plexus nerves which govern the movements of the right arm and shoulder. The medical testimony differed as to the extent and duration of above injury, namely: No improvement shown after several tests and examinations made at various times; present condition would be permanent; marked improvement in the use of the arm; and the likelihood the condition would continue to improve. Instead of the muscles in his right arm being larger than those in the left, the natural result of a right-handed man, the muscles in his right arm were noticeably smaller than those in the left. His grip in his right hand when raised above his head has been weakened. It appears that he has free use without pain of the movements of his right arm except when raising same upward above his shoulder. Both lay and medical testimony supports the fact that his hearing in his left ear is to some extent impaired; described by one physician, "plaintiff's right and left ears and throat red, which showed he had a middle ear condition;" by another physician, "the canal was a little infected, and the drum itself was, but it was not perforated;" by lay witnesses, "if one was not on his right side speaking in a normal voice, he did not understand at all what was being said." One physician was of the opinion that there had been a "little scarring or brain damages" based on his finding of damage to the plexus nerves, and a greater activity in the left knee jerk.

Plaintiff, who was 24 years of age at the time of trial with a life-expectancy under the American experience table of mortality of 39.49 years, was receiving a gross monthly wage of $270 at the time he was injured, a customary wage then prevailing for such railroad employment, which he had received since making his first pay-run in February, 1945. Plaintiff who entered East Texas Teachers College in January, 1946, under the educational provisions of

the "GI Bill of Rights," had satisfactorily completed at the time of trial all courses he had started in agricultural and industrial education; and as testified to by him, he expected to graduate in the usual time, namely, two-and-a-half or three years more, and then hoped to find a job in this line of work, the main requirements of which would be office work, such as drawing plans for building and engineering.

As re-announced in Kimbriel Produce Co. v. Webster, Tex.Civ.App., 185 S.W.2d 198, 199, 202, citing various authorities and legal reference works which involve the amount of damages for personal injuries, to which may be added 25 C.J.S., Damages, § 198: "There is no set formula applicable to cases of this character whereby the exact amount can be measured or ascertained." There are no two injuries alike in all particulars and that have the same consequences or results, in so far as damages are concerned. "A study of results reached in the reported cases seem to justify the statement that the courts generally grant relief if convinced that the verdict substantially exceeds or falls below any rational appraisal or estimate of the damages * * *." 15 Am.Jur., p. 620.

No member of plaintiff's body has been severed. He suffered no broken bones. If it be conceded that the injury to the right shoulder and upper right arm is permanent and will not improve, still he has not lost total use of same. He has not been rendered totally incapacitated. If any effect be given to the award by the United States Government of a 40% physical disability by reason of previous injuries, then it is within reason to say that such diminution of a future earning capacity will not be wholly attributable to the injuries received in the collision. The impairment to his hearing has not affected his ability to pursue his studies and make his college grades in the classroom. The evidence reflects no visible, embarrassing scars or deformities.

Giving effect to the pain and suffering in the past and that he likely will suffer in the future; his loss of earnings he has suffered to date and that he will likely suffer in the future as a result of the injuries received in the collision; the present increased cost of living and the current decreased purchasing power of the dollar; and indulging in the presumption that such decreased value of the dollar will continue through the years to follow and that the income taxes will not be materially reduced, we feel, after a careful consideration of the evidence, that the award of $35,000 exceeds by $15,000 a rational appraisal of the damages sustained by plaintiff as a result of the injuries sustained.

Having reached the conclusion that the record presents no reversible error save that complaining of the excessiveness of the award, and acting under the provisions of Rule 440, T. R. C. P., if appellee will file in this court, within 15 days from date hereof, a remittitur of $15,000, judgment will be reformed and affirmed for the sum of $20,000; otherwise, said judgment will be reversed and remanded.

Affirmed on condition of remittitur.

### On Motion for Rehearing.

The order which required the remittitur was grounded on the conclusion reached by this court, although not expressly stated in the original opinion, that the award of $35,000 damages when the nature and extent of the injuries are considered, is in such an excessive amount as to warrant the conclusion that the jury was unduly swayed by some sentimental or other emotion.

Appellee has filed a remittitur of $15,000, subject to the court's action on his motion for rehearing. The motion for rehearing is respectfully overruled. The judgment of the trial court in favor of G. E. Moore will be reformed, in accordance with the remittitur, so as to allow appellee, G. E. Moore, a recovery of $20,000 against Berryman Henwood, Trustee, St. Louis Southwestern Railway Company of Texas.

As so reformed the judgment is affirmed.