### TEXAS & N. O. R. CO. v. COOGLER.
### No. 4502.

Court of Civil Appeals of Texas. Beaumont.
March 4, 1948.

Rehearing Denied March 7, 1948.

Roy L. Arterbury, of Houston, M. M. Feagin, of Livingston, and Baker, Botts, Andrews & Walne, of Houston, for appellant.

Campbell & Foreman, of Livingston, for appellee.

COE, Chief Justice.

This is an appeal from a judgment of the District Court of Polk County wherein appellee filed suit for damages for injuries received by him on November 29, 1946. The case was tried to a jury and upon the verdict of the jury the court entered judgment for appellee in the sum of $40,000.

Appellee, among other things, alleged that on the date of the accident, November 29, 1946, he was and had been for sometime prior thereto employed by appellant in the hauling and delivering of freight from its depot in Livingston, Polk County, Texas, to the consignees in said city; that as part of the duties of his employment it was necessary that he unload local freight from the cars at the depot in Livingston, and that on said date, while actually engaged in the discharge of his duties in unloading freight from a car, spotted at the depot, to be hauled by him to the consignees of said freight; that the agents, servants and employes of said railroad company carelessly, negligently and wantonly, and in total disregard of the safety of appellee, made a flying switch, throwing one or more cars into the siding on which the car in which appellee was working was located, without an engine attached thereto and power brakes to control same as were adequate to control and keep said car from running into and striking the car in which appellee was working with great force, which negligent and wanton acts on the part of the appellant were each direct and proximate causes of the car in which appellee was working being struck by such cars with such violent force as to inflict on appellee the injuries alleged to have been received by him; by trial amendment he alleged that the appellant kicked one or more cars onto the siding, and into the car in which the appellee was working, was located, without adequate brakes to control same and without having warned appellee that said cars would be pushed against the car in which he was working, that they were negligent in failing to keep an engine attached to said cars with adequate braking equipment to control and stop same before striking the car in which appellee was working, alleging the damages to be in the sum of $60,000 and the further sum of $750 for medical, hospital and doctors' bills which he was forced to incur in connection with the injuries received.

The appellant answered by a general denial and by special answer alleged that if appellee received any injuries on the occasion in question, such injuries were a direct and proximate result of his own negligence and contributory negligence. The only question presented for our decision is whether or not the damages awarded ap-

pellee are excessive in an amount requiring the appellee to file a remittitur or upon his failure so to do to reverse and remand this cause for another trial. The appellant's contention being that the answer of the jury to special issue No. 10 (assessing the damages suffered by appellee) is contrary to and against the great weight and preponderance of the evidence and should be set aside and held for naught, that appellee having himself plead that he had certain physical deformities and abnormalties prior to the accident, assumed the burden which he failed to discharge of distinguishing by competent evidence between such prior injuries and the injuries, if any, which he received on the occasion in question, and not having discharged such burden the appellee is bound by the uncontroverted evidence offered by appellant to the effect that on the occasion in question appellee received only a muscular strain sufficient to disable him for only a comparatively short period. They further contend that the car that rolled against the car in which appellee was working was moving only two or three miles per hour, appellee could not, therefore, have received a violent fall, there were no resulting broken or misaligned bones. The only injury the appellee received was the muscular strain; that the damages awarded by the jury were therefore grossly excessive and should be reduced by at least $35,000. Appellant makes no contention that it was not negligent on the occasion in question, and that such negligence was the proximate cause of such injuries as the appellee received. The only contentions being that the appellee only suffered a muscular strain from which he would soon recover, therefore the verdict of the jury was grossly excessive.

█ The rule applicable to the character of cases here presented seems to be that although the verdict is large and the trial court in the exercise of the sound discretion might properly have set it aside, the appellate court would not disturb the verdict because it may seem too large, in the absence of circumstances tending to show that it was the result of passion, prejudice or other improper motive, or that the amount fixed was not the result of a deliberate and conscientious conviction in the minds of the jury and court or so excessive as to shock a sense of justice in the minds of the appellate court, but where the verdict appears to be palpably and manifestly excessive the trial court should set it aside and if it refuses to do so, the appellate court will reverse and remand the case for another trial or require remittitur.

█ In passing upon this question we must view the evidence in the most favorable light to appellee. When this is done the following is what is substantially shown: Appellee, in his young childhood, had suffered an affliction which had rendered him a cripple throughout his life, incapacitating him to some extent in the use of his right leg and left arm, producing a curvature of the spine and an abnormal condition in the pelvic or lumbar region, some deformity in his left hip and other deformities, that notwithstanding these handicaps the appellee, to a large extent, overcame the disabilities thus caused him and was able to and did work regularly at hard manual labor and on many occasions assisted in handling heavy objects in the course of his work, and was always physically able and did his part. This was shown by several witnesses who had known appellee for many years. Appellee was a man 55 years of age, was a married man and had raised five children; had lived in the city where this cause was tried all his life; that he had been working for the appellant for 12 or 14 years hauling freight; that in addition to that he worked for the Express Company picking up and delivering express, using a truck in doing so which he operated himself; that he had picked up and loaded freight; that he had worked for other people in hauling and moving people and had carried his part of the load when doing so; that when his day's work with his truck was over he would work around his house and in his garden as long as it was light enough for him to see. In short, it was shown that although appellee was recognized as a cripple he was able to and did work regularly at hard manual labor, and in addition to the work around his home and garden, earned about $235 per month.

Since the question of negligence on the part of the appellant is not here involved we will not go into detail as to facts and circumstances which produced appellee's injuries further than to say that on the occasion in question he was engaged with two others in unloading freight from the car spotted near the depot in Livingston, and while so engaged, appellant's employees, in a switching movement, kicked three cars in upon the track where appellee was working, striking the car in which he was working with sufficient force as to knock it a distance of some 40 feet across the street where it struck and coupled up with other cars and stopped, that when the car in which the appellee was working was so struck he fell against a crated stove in the car, striking his back thereon and against the wall of the car with his shoulder, knocking him down; that appellee did not immediately realize that he was seriously injured and drove his truck home, returning to the depot at one o'clock to pick up his express deliveries constituting some 3 or 4 little pieces of express, that he told the depot agent that he could unload it and would then go home and when asked by such agent if he wanted to make a report with reference to his injuries he suggested that they wait until morning, that he did not want to make a complaint for damages if he could get by without it; that he went back home and had to take aspirins and his wife bathed his back with alcohol, but he did not rest any, that the next morning he could hardly get up but managed to get back to the depot by taking it slow and easy; upon his arrival at the depot he was informed by the agent that there was a lot of work to do but he told the agent that he was not able to do it. He then made out a claim to the company. Soon thereafter he went to see Dr. W. W. Flowers who was the railroad doctor there in Livingston and went to the hospital. This was on November 30th and he remained in this hospital until Sunday before Christmas. When asked about his condition immediately following the ocassion of falling in the car he testified that his back felt dead and numb, and that his right leg also felt the same; that before he was hurt he could walk up steps with heavy loads without any assistance, but now he has to use his hand on his right leg in order to walk up steps, that he can't use his right leg to do anything; that it is dead and hurts and the ache goes all the way down to his ankle; that his left arm pains him and he hasn't any strength in it and he cannot prevent his left arm from shaking and that he had no such conditions before his injuries; that there is a knot or protrusion on his back where he struck the wood stove in the car when he fell; that such knot is plainly visible to anyone, that it is located in the small of his back right over his kidneys on his left side; that he now has to wear a brace on his back in order to get around, that he can't walk around without such brace, that he hurt his left shoulder, his neck and back in line with his shoulder blade, the part of his body that struck the wall when he fell in the car; that he suffers pain and is sort of stiff; that he has to take medicine to ease such pain and that he has to use hot applications such as electric pads and hot water bottles from time to time; that this condition seems to be getting worse; that the knot in the small of his back which is plainly visible pains him and that also is getting worse, that there has not been a second since the time he was injured but what that has given him pain, that also applies to his shoulder, back and shoulder blades, that he was never free of pain, that he has to lay down most of the time, can't sit around, gets nervous and the muscles of his back begin to draw and his legs hurt and he has to lay down, that these conditions did not exist before his injury, that his right leg pains him and has a dead feeling and that that condition is getting worse, that he did not have anything wrong with his left shoulder or neck or back or leg before his injury, that he never had any injury to the ligaments or muscles of the small of his back before his injury, nor to his right leg or arm, that he had a physical handicap before his injuries caused from what he would call common risings on his side that had affected his right arm and his left hip, that his condition had caused him to suffer mental worry about making a living for

himself and family and that this is getting worse, that after Christmas following his injury he went to Houston to see a Dr. Greenwood at the request of a Mr. Arthur who was working for the railroad company and was sent to the Methodist Hospital where he was examined by Dr. Greenwood and Dr. Smith who also made X-ray pictures, that he remained in the hospital at Houston for about four days, that he went to Houston to see Dr. Solomon D. David who examined him and made X-ray pictures of him. The appellee summed up his physical condition substantially as follows: That the injuries received by him on the occasion in question have not aggravated or caused the old injury to give him more pain, that his old injuries are about the same, that the lower part of his back is never easy, that his left arm is never easy, that his left shoulder is never easy, that his left leg which was injured is never easy, that his fingers feel sleepy and tired, that they never felt that way before the injuries, that he never had the tremor in his left hand or nervousness before the injuries, that he was able to use his shoulder and raise it before the injury, that he could not use it as well now as before, that he never used a walking stick in his life before the injuries but that now he could not get along without it, that his right forearm was always shorter than his left one, that he was not able to stand on his legs evenly, that his left leg is shorter than his right.

Appellee's testimony with reference to the pain suffered and the treatment necessary for him to obtain any ease and rest was fully corroborated by his wife and other members of his family.

Appellee's medical testimony as to his physical condition was given by Dr. Solomon D. David who testified that he had made a physical examination of appellee in his office on May 10th or 15th, 1947, when he gave him a complete physical examination and made several X-ray pictures of him. He explained what was revealed by the X-ray pictures, including what were no doubt the deformities existing in appellee's spine, pelvic region and left hip, before the alleged injuries; none of these old abnormal conditions were attributed to the alleged injuries suffered by appellee. He further testified that the X-ray pictures revealed that there was an injury to the intervertebral disc between the fifth lumbar vertebra and the sixth one which could have been caused by the injury and that in his opinion it was so caused, and that in his opinion it would probably get worse; that in his opinion appellee's inability to walk up and down steps without pulling up on his pants leg and flexing that leg was caused from the injuries, which was the result of sciatic neurosis which is inflammation of the sciatic nerve which is the main nerve coming down from the spine to the lower extremities; that this is one of the largest nerves in the human body and that this particular nerve was injured or damaged; that there is pressure on the right sciatic nerve in this instance because it manifests itself by the pain running down that leg as well as causing numbness and that he suffers lightning pains when extreme pressure is applied in that region; that he found spasticity in the muscles and tendons where they could not be flexed. All of the muscles which are the spinal muscles are very prominent; that they are spastic or rigid when pressed down and then they begin to quiver; that this is a condition that could not be faked; that such condition, in his opinion, would cause appellee pain and that it would get worse; that in making his physical examination of appellee's left shoulder that he found same to be stiff or ankylosed; that all motion that could be exhibited by the appellee was a combination of the shoulder blade movement and not the shoulder proper; that this is a condition that could not be faked; that appellee's condition is unfavorably progressing; in other words, getting progressively worse and that in his opinion the appellee is totally disabled from performing manual labor again in his life; that this is the result of the injuries received by appellee on the occasion in question; that the tremor in appellee's left hand is due to neurosis which is a pathological condition involving the nerve in the neck; that since appellee suffered none of these things before his injuries, that he was of the opinion that the injuries produced them and that he was afraid that they would get worse and that

such injuries were such as to cause him intense pain and suffering and that he was inclined to think that he would continue to have pain right along the rest of his life; that he took note of the swelling or protrusion on the right side of appellee's back and that he would never be able to take exercise to correct that condition. It is true that Dr. Flowers and Dr. Smith, who testified for appellant, disagreed with the testimony given by Dr. David, and in substance testified that the condition revealed by the X-ray pictures made by Dr. David revealed nothing except the deformities which appellee had had for many years and that in their opinion appellee had suffered nothing more than a severe muscular strain from which he should recover in a comparatively short time. Appellant did not cross examine Dr. Solomon David, relying on the testimony of Dr. Flowers and Dr. Smith to show that his incapacity produced as a result of his injuries was more or less of a temporary nature. This conflicting testimony presented to the jury an issue of fact as to the extent of appellee's injuries received on the occasion in question, and is sufficient to support a conclusion on their part that as a result of the injuries received by the appellee, because of the negligent acts of the appellant, have totally disabled him for the remainder of his life and that he has or will continue to suffer much pain as a direct result of such injuries.

When we take into consideration the pain and suffering in the past and that appellee will likely suffer in the future, his loss of earnings that he has suffered to date and that he would likely suffer in the future as a result of his injuries, and the present increased cost of living and current decreased purchasing power of the dollar, all of which is proper to take into consideration in determining whether an award for personal injuries is excessive, we are unwilling to say that the amount of damages awarded by the jury is so excessive as to indicate that the jury was governed by an improper motive in arriving at same. When we take into consideration the present purchasing power of the dollar as compared with its purchasing power not

more than 10 years ago, the true value of appellee's award has been upheld by the courts of this and other states as being reasonable and just. 13 Texas Jurisprudence, page 261 et seq., Sections 148, 149, 150, 153, 154, 155, 156 and cases there cited; 15 American Jurisprudence, pages 620 et seq., Sections 204, 205, 206, 207, 209 and 210 and cases there cited.

It follows from what we have said that we are of the opinion that the judgment of the trial court should be, and the same is, affirmed.