**THOMPSON, Trustee v. BARNES.**

**No. 12229.**

Court of Civil Appeals of Texas. Galveston.

Nov. 16, 1950.

Rehearing Denied Jan. 25, 1951.

Masterson & Pope and Fred L. Williams, Jr., all of Angleton, for appellant.

W. O. Calhoun, of Freeport, and Helm & Jones, John L. Hill and W. J. Kronzer, Jr., of Houston, for appellee.

GRAVES, Justice.

D. P. Barnes, Appellee, filed this suit in the Court below against Guy A. Thompson, Trustee, for the Houston & Brazos Valley Railway Company, Appellant, to recover compensatory damages for personal in-

juries to his back, alleged to have been sustained by Appellee, while acting in the course of his employment as Railroad Conductor for Appellant.

Appellee brought his action under the Federal Employers' Liability Act in two counts; the first, alleging a violation of the Federal Safety Appliance Act; the second alleging that Appellant was negligent in certain respects. The Appellee alleged that, due to the occurrence in question, Appellee received a back-injury, and that for such back-injury, he, Appellee, was entitled to be compensated in the sum of $85,000.00.

The Appellant denied any violation of the Safety Appliance Act, and denied that he, Appellant, was in any manner negligent. The Appellant further denied that any violation of the Federal Safety Appliance Act, or negligence of the Appellant, was a proximate cause of any injury. Appellant further denied that Appellee sustained any injury on the occasion in question. He also alleged that Appellee's condition at the time of the suit was due solely to—or was contributed to by—a pre-existing physical condition, injury, or illness.

The cause was tried before a Jury, and was submitted upon some 38 Special Issues.

The Jury answered the Special Issues favorably to Appellee, and awarded him the prayed-for $85,000.00.

This appeal by The Trustee proceeds from that decree.

As the foregoing statement has presaged, the Appellee based his claim-in-law for relief herein solely on Title 45, U.S.C.A. § 2, the "Automatic Couplers" provision of the Safety Appliance Act, and Title 45, U.S.C.A. § 51, known as the "Federal Employers' Liability Act." Specific wrongful acts were charged under each of the above statutes. These two statutes read as follows:

Title 45, U.S.C.A. § 2:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars. Mar. 2, 1893, c. 196, § 2, 27 Stat. 531."

Title 45, U.S.C.A. § 51:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter. Apr. 22, 1908, c. 149, § 1, 35 Stat. 65; Aug. 11, 1939, c. 685, § 1, 53 Stat. 1404."

Not only so, but the trial court, in tracking the discrimination thus practiced by the opposing litigants, apparently recognized that the only over-all question at issue between them was whether or not either or both of the quoted Federal Statutes, when applied to the facts that had been brought out in the trial pursuant thereto, entitled the Appellee to a recovery against the Appellant, or the latter to an acquittal from the former's complaint.

Wherefore, the Court, in propounding such large number of inquiries to the jury, literally cross-examined them in turn, upon the separate contentions from both sides.

Moreover, on the coming in of the jury's verdict, it limited its judgment to one entered strictly upon the verdict, as rendered, without adding any finding of its own from the pleadings and evidence.

Under such a setting, neither side makes any contention here that this controversy is to be governed by the Texas State Railroad Law; but both recognize that it sounds in the Federal Law only, and that as resulting from the application thereto of the two Federal Statutes so prescribed under, along with the decisions of the Federal Courts construing them.

In substantial substance, the jury's findings were these:

"(1) Barnes sustained an injury or injuries to his body; (2) the injury or injuries were received in the course of his employment; (3) the coupler on the car would not open by the use of manual force by a person of ordinary strength pulling on the pin lever connected to it; (4) that Barnes attempted to open the coupler by pulling the pin lever with his left hand, and the knuckle with his right hand; (5) the coupler would not open in the manner that Barnes attempted to open it; (6) his attempt was a reasonable and proper attempt to open the coupler; (7) it was necessary for Barnes to go between the railroad cars; (8) Barnes went in between the cars for the purpose of preparing the coupler to couple with the next car; (9) the failure of the coupler to open in the manner Barnes attempted to open it was a proximate cause of his injuries; (10) the coupler would not efficiently perform the services it was intended to perform; (11) the failure to efficiently perform its service was negligence; (12) such negligence was a proximate cause of his injuries; (13) the tank-car could not be uncoupled without the necessity of going in between the cars; (14) the failure of the coupler in that respect was a proximate cause of the injuries; (15) the knuckle lock was defective; (16) defendant furnished the plaintiff a defective knuckle lock; (17) the furnishing of a defective knuckle lock was negligent; (18) such negligence was a proximate cause of the injuries; (19) the condition of the coupler could have been ascertained by reasonable inspection by the Railroad; (20) defendant failed to make a reasonable inspection; (21) such failure was negligence; (22) such negligence was a proximate cause of the injuries suffered by Barnes; (23) the Railroad permitted Barnes to work with a defective knuckle-lock; (24) this constituted negligence; (25) it was a proximate cause of his injuries; (26) it was not negligent for Barnes to have attempted to open the knuckle lock in the manner that he did; (28) same as 26; (30) his injuries were not sustained from risks ordinarily incident to Barnes' employment; (31) it was not negligence for Barnes to have gone in between the ends of the cars without first having attempted to open the coupler by using the lever; (34) Barnes was not acting in the capacity of a brakeman at the time he was injured; (35) Barnes 'had suffered injury, infection or disability prior to February 2, 1949'; (36) such pre-existing physical condition was not the sole cause of Barnes' infirmity; (37) the accident was not the result of an unavoidable accident; (38) Barnes was entitled to recover of and from the Railroad $85,-000.00 for lost earnings, past and future, physical pain, past and future, mental anguish, past and future."

In attacking such verdict and judgment the Appellant, in substance, presents these, among other claims for reversal, to-wit:

1. There is no proof in this record that the coupling apparatus was defective on February 2, 1949.

2. There is no proof in this record that the pin lever on the side of the car would not operate in an efficient manner at the time of the accident.

3. The accident did not occur "on its line", as stated in the Safety Appliance Act, Sec. 2.

4. The attempt made by Barnes to open the coupling apparatus was not a "reasonable and proper attempt."

5. Since there was evidence that the cars could couple automatically by impact if only one of the couplers was open, there was no necessity for Barnes to go in between the cars to prepare them for coupling.

6. The Safety Appliance Act was not applicable because at the time of the accident the act or attempt which was being undertaken by Barnes was not a step in the coupling procedure.

7. As a matter of law the injuries and damages suffered by Barnes did not proximately result from any defective or unsafe condition of the coupling apparatus, because:

(a) The Railroad could not anticipate that Barnes would use the equipment in the manner that he did; and

(b) Since Barnes knew his own strength best, the Railroad cannot be held responsible for an injury received by him as a result of pulling or tugging on a defective coupling apparatus.

8. The Federal Employers' Liability Act, being Title 45, U.S.C.A. § 51, is inapplicable, under the facts and circumstances in this case because:

(a) It is not negligent to furnish a railroad employee a defective coupling mechanism, because it was not proven to be "unsafe or unsuitable."

(b) It is not negligent to permit a railroad employee to work with defective equipment because it was proven to be "unsafe or unsuitable."

(c) There is no proof to support the findings of the jury that the Railroad failed to make a reasonable inspection of the coupling apparatus involved.

(d) There is no proof in the record that the Railroad did, or could have by the exercise of reasonable diligence, ascertained that the coupling apparatus was defective.

9. The sum of $85,000.00 is grossly excessive.

This Court, after a painstaking consideration of the record, the briefs, and the arguments for both sides—written as well as oral,—concludes that no reversible error in the appealed-from judgment has been pointed out.

■ At the threshold, it has become [convinced] that our Federal Courts have already, bindingly upon this Court, decided —on the legal equivalent of the same states-of-fact—all the controlling controversies rendered justiciable here by the record brought up.

■ In other words, they have, as the citations following herein will disclose, specifically construed the meaning of the two quoted basic statutes—i.e., Secs. 2 and 51, of Title 45, U.S.C.A., and the trial court has correctly applied them in this judgment.

■ In the second place, after closely studying the body of this evidence, as brought up in the statements-of-fact, this Court is unable to hold that any one of the recited findings-of-fact of the jury was without support in the testimony.

These two conclusions require an affirmance of the judgment. While both State and Federal Courts have, by statute, jurisdiction over railway-employee cases arising under these two Federal Acts, the construction of them is referable to the Federal Courts only. Bailey v. Central Vermont Ry. Co., 319 U.S. 350, 63 S.Ct. 1062, 87 L. Ed. 1444; Brady v. Southern Ry. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239.

So that, when the findings of this jury are looked to, in the light of the authoritative Federal-Court holdings that have been made upon essentially the same groundwork of facts, it is obvious that the trial court, in this instance, did not err in concluding that it was without authority to render a different judgment than it did.

It would be supererogatory to undertake a re-statement of the testimony, or even a résumé thereof, upon which such a large number of findings was based, hence that will not be undertaken; but this Court has carefully pursued the inquiry into the testimony, and, as above indicated, is unable to find any material one of such findings that did not have ample evidence to justify it.

As a practical and technical matter, it is somewhat difficult for minds not trained in mechanics, machinery, or the operation of railroad appliances, to understand just

what the defective conditions of the two appliances in question here—i. e., the pin-lever and the knuckle-lock, as well as the coupling-apparatus itself, as to details were; but one thing is very clear, and that is that the leading decisions of the Federal Courts construing the two statutes here involved have determined just what acts, within the meaning of those appliances, constituted departures from, or violations of, those provisions for the safety of the railway employees.

Some of the recent decisions of the United States Supreme Court, bearing upon the application of one or the other of these statutes under analogous, like, or materially similar factual conditions, may be thus collated: Lavender v. Kurn, 1946, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Wilkerson v. McCarthy, 1949, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Myers v. Reading Co., 1947, 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615; Carter v. Atlanta & St. Andrews Bay Ry. Co., 1949, 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236; Affolder v. New York, C. & St. L. R. R. Co., 1950, 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683; Penn v. Chicago & N. W. Ry. Co., 1948, 335 U.S. 849, 69 S.Ct. 79, 93 L.Ed. 398; Coray v. Southern Pacific Co., 1949, 335 U.S. 520, 69 S.Ct. 275, 276, 277, 93 L.Ed. 208; Swinson v. Chicago, St. Paul, M. & O. R. Co., 1935, 294 U.S. 529, 55 S.Ct. 517, 79 L.Ed. 1041.

Indeed, this Court sees no material difference between this case and the cited Penn v. Chicago & N. W. Ry. Co. case, in so far as the claimed "Safety Appliance Act" violation is concerned, hence no reason for not affirming it on that feature upon that authority alone.

■ Appellant's 9th and 13th points, complaining in the former that the verdict was grossly excessive, and in the latter that the trial court refused submission of its requested Issues Nos. 7 and 8, inquiring of the jury whether the Appellee's pre-physical condition, prior to the accident herein complained of, contributed to the infirmity he claimed under the latter, and, if so, to what extent, are overruled, upon considerations which may briefly be stated this way:

1. It may be conceded that "Appellee could never reasonably have hoped to amass through 20 years of honest, hard application, $85,000.00, had he continued at the same employment he had engaged in all of his life," as Appellant urges; but that is not the test as to whether or not such allowance was excessive, because it omits consideration of any allowance for "his physical pain, past and future, and his mental anguish, past and future," which was required to be considered under the Court's charge.

■ Under the evidence, this Court is unable to say that such allowance was reversibly excessive. Younger Bros. v. Marino, Tex.Civ.App., 198 S.W.2d 109, 114, writ refused, no reversible error; Henwood v. Moore, Tex.Civ.App., 203 S.W.2d 973; Dallas Ry. & Terminal Co. v. Guthrie, Tex.Civ.App., 206 S.W.2d 638, reversed on other grounds, 146 Tex. 585, 210 S.W.2d 550; Erwin v. Welborn, Tex.Civ.App., 207 S.W.2d 124; Texas & N. O. Ry. Co. v. Coogler, Tex.Civ.App., 209 S.W.2d 778, 783, writ refused, no reversible error; Industrial Fabricating Co. v. Christopher, Tex.Civ.App., 220 S.W.2d 281, 290, writ refused, no reversible error; Hill & Hill Truck Line, Inc., v. Van Schoubroek, Tex.Civ.App., 233 S.W.2d 167; Roy L. Jones Truck Line v. Johnson, Tex.Civ.App., 225 S.W.2d 888, 896, writ of error refused; Allbritton v. Sunray Oil Corp., D.C.Tex. 1950, 88 F.Supp. 54; Bayshore Bus Lines v. Cooper, Tex.Civ.App., 1949, 223 S.W.2d 77, writ refused, no reversible error; Texas Bus Lines v. Whatley, Tex.Civ.App., 1948, 210 S.W.2d 626, writ refused, no reversible error.

■■ 2. It is true that there was testimony offered by Appellant on this trial, tending to indicate that Appellee had had prior physical disorders; but the language of the two requested issues discloses, first, that they are not in substantially correct form, as required by Texas Rules of Civil Procedure; and, secondly, they did not conform to what appears in Texas, under our decisions, to require that, in a personal-injury case, the proper method of sub-

mitting such an inquiry is in a limiting-instruction to the damage-issue. See these authorities, Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683; Dallas Ry. & Terminal Co. v. Orr, 147 Tex. 383, 215 S.W.2d 862, especially Nehi Bottling Co. v. Patton, Tex.Civ.App., 142 S.W. 2d 900, by this Court.

These conclusions require an affirmance of the judgment. It will be so ordered affirmed.

### On Appellant's Motion for Rehearing

Appellant's motion for rehearing, filed herein through his original attorneys on December 1, 1950, and supplemented by written argument in his behalf, jointly filed December 7, 1950, by such original attorneys and by new attorneys in his behalf, on rehearing, Messrs. Kelley, Mosheim and Ryan, as well as appellee's answer thereto filed December 12, 1950, have been carefully considered.

Meanwhile, this Court has corrected its original opinion herein in two small verbiage particulars, of which all counsel for both sides have been advised.

As the stated filings on rehearing disclose, the opposing parties differ as to what the record on rehearing presents for this Court's consideration, especially as affects the appellant's original claim, under its ninth point-of-error, "that the verdict and judgment were grossly excessive, without support in the evidence, and contrary to the overwhelming preponderance of the evidence."

After a careful re-consideration of the cause, inclusive of all such filings in behalf of both parties, this Court is unconvinced of error in its original disposition; wherefore, no extended additional opinion upon rehearing is considered indispensable.

Of course, if the pleadings and evidence for the appellee did not bring his cause within the purview of the two federal statutes therein prescribed under by him, as the appellant originally contended and repeated on rehearing, this Court's former judgment should be set aside; but a re-examination of its former opinion, and of the authorities upon which it was based, convinces it anew that its contrary holding to the appellant's position was correct.

As concerns the appellant's reiterated protest against the jury's verdict for, and the trial court's fixing of the amount of appellee's damages at $85,000.00, it is again held that this Court is unable to say that such allowance was shown, by any evidence it is permitted to consider, reversibly excessive, under the authorities cited in the original opinion upon that issue.

The re-examination of the record shows that, in its order overruling the appellant's amended motion for a new trial, the court below made, in substance, these findings:

1. That the original and amended motions for new trial were both duly filed;

2. that the supplemental motion for new trial was not duly filed, and the court struck the supplemental motion for new trial for that reason;

3. that it then proceeded to overrule the amended motion for new trial.

Such re-examination of it further shows that appellant's amended motion for a new trial did not complain of the excessiveness of the verdict against it, on the ground that the jury had been guilty of misconduct in considering any amount of attorneys' fees, or income-tax, etc., that the appellee might have to pay out of the verdict it might render in his favor.

Wherefore, those contentions are not properly brought into this Court for any consideration thereof by it in determining whether or not the amount of the verdict so returned by the jury was excessive.

Indeed, upon that question, while the verdict is large in amount, it has not been, from the evidence, made to appear here that it was more than the jury were properly authorized to find was reasonable compensation to the appellee for his injuries.

The motion for rehearing will be refused.

Refused.