**John D. PRATER, Appellant,**

v.

**A. D. HOLBROOK, Appellee.**

**No. 5051.**

Court of Civil Appeals of Texas.

Beaumont.

Sept. 22, 1955.

Rehearing Denied Nov. 2, 1955.

Chilton Bryan, Houston, for appellant.

Smith & Lehmann, Houston, Campbell & Foreman, Livingston, for appellee.

ANDERSON, Justice.

The suit is the outgrowth of an automobile collision that occurred on a public highway in Polk County on January 8, 1950. It was instituted by the appellee, A. D. Holbrook, who will be also referred to as plaintiff, to recover for both personal injuries and loss of property. The defendant, John D. Prater, in his turn, cross-acted, seeking to recover for personal injuries alleged to have been sustained by both himself and his wife. Trial to a jury resulted in a verdict on which judgment was rendered in favor of the plaintiff for the sum of $51,150.; of which amount, $50,000 was assessed for personal injuries found to have been sustained by plaintiff. The defendant recovered nothing by his cross-action.

The collision occurred about two miles south of Corrigan, on the south slope of a hill that sloped both north and south from its crest. The plaintiff was driving southward; the defendant, in the opposite direction. The plaintiff undertook to pass a southbound motor van. Upon being confronted by defendant's automobile, he turned to his left or toward defendant's side of the highway. He claims that he succeeded in getting completely off the pavement before he was struck. His automobile was struck in its right side; its direction was reversed; and it was lodged against the east embankment of the highway. The defendant's automobile came to a stop some 60 or 70 feet farther north, partly on and partly off the pavement.

It is plaintiff's theory of the case, and he testified, that he caught up with the motor van at the base of the north slope of the hill, but did not undertake to pass it until after he had passed over the hill's crest and beyond or south of all highway markings that prohibited him from passing; that he emerged from behind the van gradually and saw an automobile approaching from the south which he concluded was far enough away to enable him to pass the van and return to his side of the road safely; that he thereupon accelerated his car to a speed of perhaps 35 miles per hour and drew about even with the cab of the van; that at this point, the defendant, whom he had not previously seen, suddenly set out to pass the other automobile in—for the defendant—a no-passing zone; that defendant was traveling at a high rate of speed, and plaintiff was left with insufficient time within which either to finish passing the van or to drop back behnd it; that he, the plaintiff, then signalled by hand his intention of turning to his left, and proceeded to drive his car off the pavement and onto the east shoulder of the highway; but that defendant also swerved toward the east edge of the pavement, ran partially off it, and struck plaintiff's car, as aforesaid.

Plaintiff's testimony was corroborated in material aspects by that of Mrs. Robert Owens, who claimed to have been an occupant of the automobile defendant is supposed to have passed and to have witnessed the collision. She testified that defendant passed the automobile in which she was riding, in what was for the defendant a no-passing zone, and that at the time of being struck, plaintiff's automobile was completely off the pavement. She also testified that the automobile in which she was riding was running at a rate of speed of about 60 miles per hour, and that defendant was running considerably faster when he passed. In addition, there was testimony that skid marks commencing at the center line of the high-

way ran at an angle for 105 feet up to where debris indicated the collision occurred, and then on an additional 57 feet to where defendant's automobile stood. The evidence was also to the effect that most of the debris indicating the point of collision was off the pavement, and that it was in a no-passing zone as regards northbound traffic.

The defendant denied passing a northbound automobile in the vicinity of where the collision occurred, and claimed that he was driving in his proper lane of the highway when the plaintiff suddenly drove in front of him from behind the motor van, rendering the collision inevitable. His testimony was corroborated by others who claimed to have witnessed the collision.

The jury found that defendant drove his car to the left of the center line immediately before the collision; that he drove across the center line at a place where there was a broken line on his side of it; that he failed to have his car under proper control; that he failed to keep a proper lookout; that he was driving at an excessive rate of speed; that he was driving at a rate of speed in excess of 60 miles per hour; that he drove partially off the pavement at the scene of the collision; that he was negligent in each of the respects mentioned; and that each act of negligence so found was a proximate cause of the collision. They also found that the collision was not the result of an unavoidable accident; that the defendant was not faced with a sudden emergency; and that defendant was not in a position of peril. The basic fact issues pertaining to negligence on the part of plaintiff were all answered in his favor.

Ten points of alleged error have been brought forward. However, various ones of them pertain to the same subject matter and can be discussed together.

Under point one it is urged that a series of side-bar remarks by plaintiff's counsel in the presence of the jury, including some profanity addressed to defense counsel, prevented defendant from getting a fair trial. Point two assigns as error the failure of the trial court to grant defendant's motion for a mistrial because of the profanity. And under point three, it is urged that instructions given by the court to the jury with reference to the profanity were inadequate.

The profanity is the keystone of point one, just as it is of points two and three. In fact, we do not understand appellant to contend seriously that any of the numerous remarks complained of, or all of them collectively, would constitute reversible error, in the absence of the profanity. He does insist, however, that together with the profanity they entitled him to a new trial, even though it be held that the profanity alone was not grounds for a mistrial.

The profanity we have alluded to was addressed to Mr. Bryan by Mr. Foreman while Mr. Bryan was cross-examining Mrs. Robert Owens, a witness who had been called by the plaintiff. Mrs. Owens, who, as aforesaid, claimed to have been traveling in the same direction as the defendant—i. e., toward Corrigan, or northward—and to have witnessed the collision, had testified on direct examination that after striking plaintiff's automobile the defendant's automobile went on "down the road" a considerable distance before stopping. She had also testified that her husband, who was driving the automobile in which she was riding, drove past plaintiff's automobile and stopped, and that the two of them then returned to where the plaintiff was. The incident complained of is best reflected by the record itself, from which we quote:

#### Cross-examination by Mr. Bryan.

"Q. Did you have to pass the other car to get to Mr. Holbrook's car? A. No, we was between the two cars.

"Q. The other was on beyond Mr. Holbrook's car? A. Yes.

"Q. You would have to go back farther south to get to the other car, is that right? A. That's right.

"Mr. Foreman: She might not know north from south. She said it was on past Mr. Holbrook's car, and he said south. We

object to the question. He has injected 'south' and I don't think it is fair to the little lady. She has testified that the other car went on farther down the road past the Holbrook car.

"Mr. Bryan: I object seriously to counsel getting up and putting words in the witness' mouth. I ask that the jury be instructed not to consider any of it for any purpose.

"The Court: You can get the location, now.

"Mr. Bryan, continuing with the cross-examination:

"Q. Now, Mrs. Owens, in other words, the other car was back toward Livingston, was it? A. No, on toward Corrigan.

"Q. All right. Now you have changed your story?

"Mr. Foreman: She hasn't done any such of a God Damned thing, and you know it, you son of a bitch.

"Mr. Bryan: We now move for a mistrial."

At this juncture, the jury was retired and the court assessed a fine of $25 against Mr. Foreman. The oral motion for mistrial was then overruled, the jury was returned, and the examination of Mrs. Owens, both cross and redirect, was completed. Thereupon, the defendant prepared and presented in the absence of the jury a formal motion for mistrial. Before the motion was ruled on, Mr. Foreman made known his readiness to apologize to the court and jury. The jury was returned, and Mr. Foreman made the following statement in open court:

"If Your Honor please, at this time I wish to apologize to both the Court and Jury for what I said, as well as Counsel, the Honorable Chilton Bryan, from Houston, Texas. I do say it was made on the spur of the moment, in a flash of temper, and I think I am justified in saying it was based on what, the record will now reflect, was a part of his question. I apologize to the Court and the Jury."

The defendant's formal motion for mistrial, which was based solely on the incident just related, was then overruled, and the court made the following statement to the jury: "Gentlemen (of the Jury), you will not consider that."

■ The conduct of plaintiff's attorney was a grave and lamentable breach of decorum, to be sure, and is not to be lightly dismissed; but, the record as a whole considered, we have concluded it did not constitute reversible error. In order to hold it reversible error, we should have to be of the opinion that it probably caused the rendition of an improper judgment in the case. Rules 434 and 503, Texas Rules of Civil Procedure; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596, 599; Lumbermen's Lloyds v. Loper, Tex., 269 S.W.2d 367, 370. We are unwilling to give it this evaluation and to thereby lend it stature.

The mere fact that on closely contested evidence the jury answered all issues in favor of the plaintiff and awarded substantial damages does not convince us that they viewed the incident with approval and permitted it to affect their verdict adversely to the defendant.

The language employed was obviously the product of a sudden flare of temper, and must have been so recognized by the jury. It was not employed by way of argument, with the view of persuading the minds of the jury, and could not have been so understood.

It is also to be noted that the incident happened early in the trial, Mrs. Owens having been only the second witness called by the plaintiff, and the first after the defendant had been examined under the adverse-party rule. Both considerable time and much additional evidence had an opportunity to exercise their lulling and curative effects before the jury commenced its deliberations: fourteen days intervened before the case was submitted to the jury, and eleven additional witnesses gave in evidence some six hundred pages of testimony.

The jury, we may safely assume, needed no advice from either the court or the attorneys to apprise them of the fact that the conduct in question was highly improper. However, the apology by Mr. Foreman should have served to make even more clear the seriousness of his mistake. A more elaborate charge by the court than the one given could have served no useful purpose in the circumstances.

When the profanity is considered together with the other side-bar remarks by plaintiff's counsel that have been collated in appellant's brief, we remain of the opinion that reversible error is not presented. The other remarks, all of which have been carefully considered, may be characterized as the ordinary variety of side-bar remark that it no doubt too frequently indulged in by counsel and too frequently indulged by trial judges, but which seem more or less inevitably to crop up in the trial of cases. Most of them passed without an objection being registered by defendant, and none of them provoked a motion for mistrial. Objections that were interposed were almost invariably sustained and the jury was instructed to disregard the remarks. All of the remarks are considered to have been of such nature that their harmful effects, if any, could have been removed by an instruction from the court. The great majority of them preceded the profane outburst; and after the latter, the trial proceeded in a more orderly fashion. We do not feel, therefore, that the cumulative weight of the side-bar remarks was of the prejudicial nature claimed by appellant.

■ Matters concerning the decorum and dignity of trial courts—as those under discussion were—must necessarily rest in the sound discretion of those courts, and the exercise of such discretion will not be disturbed unless abuse is clearly shown. Texas Emp. Ins. Ass'n v. Davis, Tex.Civ. App., 228 S.W.2d 257, writ refused; Williams v. Merchant Fast Motor Lines, Tex. Civ.App., 214 S.W.2d 307, 311. The trial judge was in position to evaluate the jury's reactions to each and every remark of counsel and to appraise the jury's attitude thereafter toward the respective attorneys, and his conclusions are entitled to great weight. The record before us does not justify our holding that he abused his discretion in overruling the defendant's objections and motions. In so holding, we have not been unmindful of the fact that the trial was held in Mr. Foreman's home town and county, and that neither the defendant nor his attorney was a resident of Polk County. Appellant's points one through three are overruled.

■ We find the evidence sufficient to support the jury's findings on enough of the liability issues to support the judgment, and overrule appellant's points four through seven. The findings with reference to defendant's having driven left of the center line when the broken line was in his proper traffic lane, and having subsequently driven off the pavement, are supported by the direct testimony of both the plaintiff and Mrs. Owens. The findings with reference to speed are supported by Mrs. Owens' testimony that the automobile in which she was riding was running at a speed of about sixty miles per hour, and that defendant was driving considerably faster when he passed it. Accepting plaintiff's theory of the case, and reasoning that plaintiff's automobile was in position to have been seen, and reasonably should have been seen, by defendant if the latter had been keeping a proper lookout, and that defendant would not have undertaken to pass the Owens' automobile when he did if he had in fact seen plaintiff's automobile, we think the jury's finding that defendant was not keeping a proper lookout finds support in the evidence. The finding that defendant did not have his automobile under proper control must perhaps rest on the evidence with reference to defendant's speed and his having run partially off the pavement. To the extent that it is based on such evidence, it is mere surplusage; for which reason, we forego passing on whether, in the sense of causing legal significance to attach to it, there was evidence to support the finding. The findings on the primary issues being supported, we

think there can be no doubt that the findings with reference to negligence and proximate cause are also supported by the evidence.

■ In opposition to the foregoing conclusions, the appellant first undertakes to demonstrate by arithmetical calculations that plaintiff's theory of the case is false and his evidence unworthy of belief. His calculations fail of conclusiveness because the elements of speed, distance, and location forming their basis were not fixed with certainty by the evidence. He then argues that since he was on his proper side of the highway and plaintiff was on his own wrong side of it when the collision occurred, his own act in passing the Owens' automobile in a no-passing zone, if he did, could not have been the proximate cause of the collision, and plaintiff's act in undertaking to pass the van when he did was negligence as a matter of law and the proximate cause of the collision. The argument overlooks the fact that under plaintiff's theory of the case, and his evidence, plaintiff, at a point where under the rules of the highway he had a right to do so, started to pass the van before defendant started to pass the Owens' automobile, and would have done so safely except for the fact that defendant unexpectedly blocked his way by undertaking to pass the Owens' automobile in a no-passing zone. Since plaintiff, at the time he set out to do so, had sufficient time and space within which to pass the van and get back on his side of the highway before meeting the automobile nearest him, he was not negligent as a matter of law in undertaking to pass; he was not bound to anticipate that defendant would act negligently. On the other hand, the defendant should reasonably have foreseen that in undertaking to pass in a no-passing zone he might be faced with some situation such as actually developed, and the mere fact that he succeeded in getting back on his side of the highway before the collision actually occurred does not establish as a matter of law that his act in passing was not a proximate cause of the collision. It was his conduct that boxed plaintiff in and set up the perilous situation from which neither party was able to extricate himself. Lastly, appellant argues that since he was on his proper side of the highway and plaintiff was on his own wrong side of it, the findings with reference to speed must alone be relied upon as support for the judgment, and that as a matter of law speed alone could not have been a proximate cause of the collision. A portion of this argument is answered, of course, by what has already been said. However, we do not subscribe to the proposition that excessive speed alone may not be a proximate cause of a collision. The cases of Davis v. Younger Bros., Inc., Tex.Civ.App., 260 S.W.2d 637; Wright v. McCoy, Tex.Civ. App., 131 S.W.2d 52, and Wells v. Texas Pac. Coal Oil Co., 140 Tex. 2, 164 S.W.2d 660, cited and relied upon by appellant, are not in point. In each, the evidence led the court to conclude as a matter of law that the only way in which the defendant's speed contributed to the accident was by having him present at the scene of the collision, when at a different speed he would have been elsewhere. The situation presented by the evidence before us is not of that kind. The speed at which defendant was traveling while passing the Owens' automobile had direct bearing on the rate at which the gap through which plaintiff had to reenter his side of the highway was being closed. Furthermore, the evidence supports the conclusion that each party discovered the other in time to permit of some maneuvering for position, and their respective speeds may well have affected their abilities in this respect.

The evidence has been dwelt upon thus at length only because of the obvious earnestness with which counsel for appellant urges his arguments. Essentially the same questions were before us on an appeal from an order overruling defendant's plea of privilege, and were ruled adversely to appellant. Prater v. Holbrook, Tex.Civ.App., 251 S.W.2d 547.

In assessing damages for plaintiff's personal injuries, the jury was restricted by the court's charge to consideration of only three matters: (1) pain and suffering up to trial time; (2) future pain and suffering; (3) future loss of earnings. Plaintiff had suffered no loss of earnings up to trial time.

As first deputy sheriff of Polk County, he had continued all along to receive his regular salary, and it had even been raised one or more times during the interim. At the time of being injured on January 8, 1950, he was 55 years of age and had a life expectancy, according to the mortality tables, of 17.78 years. Four years had intervened between the date of injury and the commencement of the trial on January 14, 1954. Damages, based on the three elements above mentioned, were, as aforesaid, assessed in the amount of $50,000. The appellant, under his points eight and nine, takes the position that this amount is not supported by the evidence and is so grossly excessive as to require reversal of the trial court's judgment. In the alternative, he argues that a substantial remittitur should be ordered.

Bearing on the question of future loss of earnings, there was evidence to the effect that, while he had continued to hold the position, plaintiff had been unable to discharge his duties as deputy sheriff as competently as before he was injured; that, politics being the uncertain quantity they are, the sheriff under whom he held his deputyship might fail of re-election at any election; that should plaintiff cease to be a peace officer, he was qualified for no other type of work except manual labor; that as of trial time, he was unable to do manual labor and would be unable to pass a physical examination to procure a job; and that his disability is permanent.

Bearing on the question of past and future physical and mental pain and suffering, there was evidence to the effect that the force of the impact when the automobiles collided knocked plaintiff from his car to the shoulder of the highway, and that immediately afterwards plaintiff was bloody about the face and head and was staggering and irrational. There was also evidence to show that he received the following injuries, and that each of them was calculated to cause pain, to wit: A rupture of the zyphroid process for a length of about five inches between the recti muscles of the abdomen; a rupture of the disc between the fifth lumbar vertebra and the sacrum, resulting in pressure on the sciatic nerve and

in sciatic pain; chip fractures of the fifth and sixth cervical vertebrae, the space between the sixth and seventh cervical vertebrae being almost obliterated, with resulting cervical neuritis; a broken nose, resulting in blockage of the right nostril, the nose having been knocked sidewise; a severe dislocation of his left thumb; and a ruptured eardrum, accompanied by ear hemorrhage. The plaintiff himself testified that his left leg had been numb, and that his back, neck, and right shoulder had hurt constantly, since the collision; that he could neither breathe through his right nostril nor hear through his right ear; that when he stoops, his "chest" bulges through the rupture in the zyphroid process; that his back, nose, and ear had not improved; that his chest and neck had grown worse; and that, under his doctor's direction, he still continued to wear a brace on his back and to sleep on a hard bed.

While the evidence indicates that most of plaintiff's troubles could probably be remedied by surgery, major surgery would be involved in almost every instance. Removal of the zyphroid process, which is itself major surgery, was represented to be the only treatment for the rupture. It was also represented that if plaintiff's back fails to respond to treatment by traction, braces, special exercises, and bed rest on hard boards, the only other treatment in order will be surgery for removal of the disc and fusion of the joints, entailing an expense estimated at from $1,875 to $2,065.

It is readily apparent from the foregoing summary of the evidence that there was ample evidence on which to find both that plaintiff will be disabled in the future from performing manual labor and that he has and will continue to suffer a great deal of physical and mental pain. It is problematical, of course, as to whether his injuries will actually cause him loss of earnings in the future, but this is a matter which it was peculiarly the function of the jury to pass upon. The evaluation of his probable loss in earnings, as well as of his pain and suffering, was a matter resting in the sound discretion of the jury. We find nothing in

the record to justify us in holding that they abused their discretion, and in substituting our judgment for theirs. See: Texas & N. O. R. Co. v. Coogler, Tex.Civ.App., 209 S.W.2d 778; Thompson v. Barnes, Tex.Civ. App., 236 S.W.2d 656; International-Great Northern R. Co. v. Lowry, Tex.Civ.App., 98 S.W.2d 383. Points eight and nine are accordingly overruled.

■ By his tenth point, appellant asserts that the trial court erred in permitting plaintiff's attorney, while making the closing argument to the jury, to write in chalk on the door and wall beside the jury box the answers which plaintiff's attorney was contending should be made to the various issues. The point is overruled.

Evidence heard on motion for new trial shows that the writing was done only some five or ten minutes before the closing argument was completed, and that, defendant having registered objection to it, all of it was erased before the jury left the jury box. No contention is made that any answer so written was before the jury after it retired to deliberate.

While the practice is perhaps not to be encouraged, because of abuses that may so easily be made of it, we think that in this instance no reversible error resulted. The writing was resorted to merely as a means of emphasizing what its author was saying verbally; and since it was almost immediately erased and was not before the jury during the latter's deliberations, we perceive no sound reason for considering it otherwise than as a part of the oral argument. It is improbable, all things considered, that it created a more lasting impression on the minds of the jury than the oral argument which no doubt accompanied it.

Assuming the holding in Wichita Transit Co. v. Sanders, Tex.Civ.App., 214 S.W.2d 810, to have been justified by the fact situation that was before the court, we think the case is distinguishable from this one by the fact that the answers desired had there been written out in advance of the argument, by some undisclosed author, were before the jury during the entire argument, and were repeatedly called to the jury's attention during the argument. The exact point was probably not before the Supreme Court in Triangle Cab Co. v. Taylor, 144 Tex. 568, 192 S.W.2d 143, but, by implication, at least, that case tends to support the holding we have made.

Being of the opinion, therefore, that no reversible error is presented by the record, the judgment of the trial court is in all things affirmed.