### DALLAS RAILWAY & TERMINAL COMPANY V. LEONA B. ORR.

No. A-1795. Decided December 1, 1948.
Rehearing overruled January 12, 1949.
(215 S. W., 2d series, 862.)

*Burford, Ryburn, Hincks & Ford,* and *Howard Jenson,* all of Dallas, for respondent.

It was error for the Court of Civil Appeals to hold that there was no evidence to require the giving of petitioner's requested charge instructing the jury not to consider plaintiff's frail and weakened condition, and bad health conditions prior to the accident, except insofar as they may have been aggravated by the accident. Dallas Ry. & Ter. Co. v. Ector, 131 Texas 505, 116 S. W. (2d) 683; Dallas Ry. & Ter. Co. v. Hendricks, 140 Texas 93, 166 S. W. (2d) 116; Texas Consolidated Theatres v. Slaughter, 143 S. W. (2d) 659, writ of error dismissed.

*White & Yarborough* and *Donald V. Yarborough,* all of Dallas, for respondent.

There was no error committed on the part of the Court of Civil Appeals in holding that there was no evidence that respondent's disabilities were caused by any prior existing infirmities, or that any previous illness was connected with or intermingled with the injuries complained of as a result of this accident. Sam v. Sullivan, 189 S. W. (2d) 69, writ of error refused for want of merit; Houston Transit Co. v. Felder, 146 Texas 428, 208 S. W. (2d) 880.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Petitioner, Dallas Railway & Terminal Company, defendant below, complains here of sundry alleged errors in the trial of

a personal injury suit in which respondent, Mrs. Orr, plaintiff below, upon a special issue verdict in her favor, recovered judgment against petitioner for $10,000.00; the judgment being affirmed by the Court of Civil Appeals. 210 S. W. (2d) 863.

Plaintiff's claimed injuries arose out of a collision, on July 25, 1943, at a more or less "blind" street intersection in the City of Dallas, between an automobile, in which plaintiff was riding as a passenger, and one of defendant's motor buses. The impact of the two vehicles was evidently severe. In support of her claim for damages, plaintiff alleged and produced evidence to the effect "that as a result of said accident, she was thrown against the inside parts of the automobile in which she was riding and she sustained internal injuries which resulted in her spitting up blood and resulted in blood appearing in her urine that said injuries to plaintiff's internal organs resulted in continuous pain; that plaintiff's right arm and shoulder were injuried and damaged, resulting in same being greatly swollen, sore and painful, that plaintiff's left leg was mashed, bruised, contused and was plainful, sore and swollen; that plaintiff's stomach was mashed, bruised and contused, resulting in same being sore and painful; that plaintiff's back was mashed and bruised, resulting in same being sore and painful; that plaintiff's womb was jarred and pulled out of place, resulting in same being painful and sore; that plaintiff sustained an injury to her entire nerves and nervous system as a result of said accident."

There was also testimony that as a result of the accident plaintiff was confined to bed continuously for several weeks thereafter and was treated by her physician on seven or eight occasions during this period and the few months immediately following for the ills she attributed to the accident; that though she was working at the time of the accident she was rendered unable to work for some five months thereafter; that, at least some of her infirmities attributable to the accident, such as nervousness, pain and swelling in her left leg or knee, pain in her right shoulder, back pain, lower abdomen pains, excessive and irregular menstruation and the condition of "prolapsed uterus", had continued in varying degrees until, and were in existence at, the time of trial in 1947, some four years after the accident.

The only affirmative pleadings of the defendant related to its liability as distinguished from the matter of damages, but it did present or elicit some evidence along the lines summarized in its petition for the writ as follows:

"1. Testimony that respondent resigned her job two months before the accident because of bad health. (S. F. p. 280.)

"2. Testimony that respondent had persistent headaches prior to the accident. (S. F. p. 279.)

"3. Testimony that respondent had kidney trouble before the accident. (S. F. p. 280.)

"4. Testimony that respondent lost nine days from work because of injuries received in an automobile accident before the accident in question. (S. F. p. 280.)

"5. Testimony that respondent had bronchitis and sore throat and missed nine days from work because of it before the accident. (S. F. p. 280.)

"6. Testimony that respondent's teeth were infected before the accident (S. F. p. 280, 406), and that she quit a job after the accident to have them extracted (S. F. p. 272), contrary to her story that she quit because of pain in her back caused by the accident. (S. F. pp. 120, 121.)

"7. Testimony that respondent had a miscarriage prior to the accident (S. F. p. 145), and her doctor's testimony that her female trouble could exist in the absense of trauma. S. F. p. 402.)

"8. Testimony that respondent was very frail and complained often of pain in her back before the accident. (S. F. pp. 198, 199, 201, 202, 210, 211.)

"9. Testimony that after the accident respondent did not complain but was a regular worker, and appeared to a witness who knew her to be in the same condition as before the accident, except that she had her teeth pulled. (S. F. pp. 198, 247, 248.)"

■ Neither pleading nor proof by either. party attempted to make the case one in which the accident aggravates previously existing physical defects or disabilities. The plaintiff charged everything to the accident in suit, and the defendant simply produced testimony along the lines above described.

The charge to the jury included a definition of proximate cause and also the usual special issue on damages, which, of course, is based expressly on the disabilities and pain due to the accident in suit, but does not say in so many words, though it does by plain implication, that pain and physical disturbance from other sources shall not be considered. In connection with this damage issue, defendant duly requested and the court refused a special instruction as follows:

"Gentlemen of the Jury, in reaching your answer to Special Issue No. 29, you will not compensate plaintiff for any physical or mental pain, if any, and diminished capacity to work and labor, if any, in the past, resulting from plaintiff's frail and weakened condition, female troubles, and bad health, if any, existing prior to the accident on July 25, 1943, except insofar as they may have been aggravated, if you find that they have been aggravated."

We granted the writ of error on the point that such action of the trial court was erroneous but, after hearing the case, must agree with the Court of Civil Appeals that the charge in question was rightly refused.

■ The guiding authority is Dallas Railway & Terminal Co. v. Ector, 131 Texas 505, 116 S. W. (2d) 683, in which, upon appropriate objection to a damage issue equivalent to the one actually submitted in the instant case, it was held error to refuse a qualifying instruction like that in question here, where there was evidence that the plaintiff "is suffering from an infirmity not caused by the accident * * * and where the injuries flowing from the prior existing infirmity and those flowing from the negeligence of the defendant are closely connected and intermingled to the extent that the jury might become confused and allow for improper elements of damages, * * *".

The above ruling was based on a situation wherein plaintiff pleaded and offered proof of pain and disability due exclusively to a back injury received in the accident, while the defendant presented evidence of an alleged physician of plaintiff that the latter had chronic kidney trouble, which was merely aggravated by the accident. It was a fair interpretation of this latter testimony that the plaintiff was suffering from her kidney trouble at the time of the accident and that at least some of the plain and disability suffered by the plaintiff after the accident in connection with her back was due to the chronic illness.

It therefore appears that for the rule of the Ector case to apply, there must be: (a) evidence of a definite infirmity on plaintiff's part aside from injury due to the accident; (b) evidence of casual connection—which might be close proximity in time—between such infirmity and some pain or disability suffered after the accident; and (c) confusingly close "intermingling" between the infirmity not due to the accident and that due to the accident, so that the jury might be misled into awarding money for the total pain and disability accruing from both, rather than for that accruing only from the accident. For ex-

ample, if the suit were one for pain and disability arising out of plaintiff's broken collarbone, and the only evidence concerning prior existing infirmity or its results was the bare statement that plaintiff had broken his neck some thirty years before the accident, a special instruction like that in the Ector case or the instant case would rather plainly be unjustified for lack of causual connection between the broken neck and any pain or disability following the accident involving the collarbone. On the other hand, in a suit for pain and disability due to the loss of eyesight in an accident, evidence that plaintiff suffered considerably after the accident and would have been unable to work at various times because of a longstanding condition of arthiritis in his little toe, would likewise not call for the special instruction sanctioned in the Ector case, since the element of confusingly close "intermingling" of the damages from the two scources would be absent.

Applying these principles to the present record, we find that each of the many different "extrinsic" infirmities charged against the respondent-appellant, Mrs. Orr, and in fact all of them taken together, are insufficient to require the special instruction requested.

The testimony of defendant's witness, Mrs. Blake, as to her record entry of the plaintiff having resigned a job two months before the accident because of "bad health"—even if the record were a quotation of plaintiff's own words rather than the witness's paraphrase of what plaintiff said, which is not clear—is too indefinite to have substantial bearing on any of the requirements of the Ector case. It amounts to little more than a general statement that plaintiff quit because she wasn't feeling well enough to work and has only remote relation to whether plaintiff was then suffering from a specific infirmity and still more remote connection with her alleged pain and disability from specific injuries received in the accident.

The reference to plaintiff's "presistent headaches" prior to the accident in turn refers to Mrs. Blake's testimony that her records showed plaintiff stayed away some five days from work at a time about nine months before the accident, "as she had to see a doctor on account of her head hurt her". One might infer from testimony elsewhere in the record that this was a sinus attack, but whether plaintiff had a headache on each of these days, what caused it, whether it persisted beyond five days and what connection it had with her troubles after the accident do not otherwise appear. This evidence does not even reflect a definite infirmity.

Plaintiff's alleged "kidney trouble" prior to the accident is shown only by Mrs. Blake's notation on one day's absence from work by plaintiff for this cause about eight months prior to the accident. Such evidence is not sufficiently specific or otherwise effective to make an issue that plaintiff ever suffered from real kidney trouble or that there was any causal relation between kidney trouble on her part and such pain or disability as she suffered after the accident.

Mrs. Blake's brief record that plaintiff was absent nine days from work at a time some six months before the accident, because she was "bruised and cut" in an earlier accident, does not suggest that her bruise or bruises, cut or cuts constituted a real infirmity or caused her any pain or disability after the the accident in suit.

Mrs. Blake's further notation of plaintiff's missing nine days of work from "bronchitis and sore throat" almost immediately following her earlier accident last mentioned has about the same effect on the case as the matter of that accident itself. It amounts to saying she had a bad cold six months before the accident. The testimony about plaintiff's alleged chronic dental infection is likewise inconsequental. In early 1943, or over three months before the accident, she missed one day from work in order— according to Mrs. Blake's entry—"to have her teeth fixed". She had her teeth extracted some three years after the accident, and her physician, Dr. Bruton, had an obviously vague recollection that at some time or other she "had a little pyorrhea". While it is now perhaps common knowledge that infected teeth are one of various causes of diseases like arthritis and indeed many other infirmities, the testimony about plaintiff's teeth is not evidence that her alleged pain or disability from her leg, shoulder or female troubles, which were the main items of damage, were due to arthritis or other disease not connected with the accident, nor is there any evidence in the record of her ever having any such ailment. As to the possibility of her pain or lost time attributable to tooth extraction after the accident being confused in the minds of the jury with pain or disability from the accident, such possibility is, to say the least, remote.

Considerable stress is laid by defendant on certain testimony about plaintiff's female troubles, mainly a "prolapsed uterus", which she and her doctor attributed to the accident and gave as an import factor in her pain and loss of earnings. The testimony relied upon by defendant was that during plaintiff's married life, about ten years before the accident, she spent some

little time in bed from a disturbance which might have been a miscarriage. Her doctor admitted that there are cases in which "prolapsed uterus" occurs from childbirth and other more or less natural causes, but he attributed plaintiff's condition to the accident in suit, and no testimony in the record attributed it to any other cause or indicated that plaintiff had any female troubles whatever in the ten years or so between the suggested miscarriage and the accident. Least of any evidence presented regarding extrinsic infirmities would that as to plaintiff's female troubles be a predicate for the special instruction requested.

As to the matter of plaintiff's alleged "frailty" and frequent complaints of pain in her back, the back complaints were rather reluctantly and vaguely testified to by defendant's witness, Mrs. Smith, but as having occurred some ten years prior to the accident, and the matter of their frequency or infrequency was particularly hazy in the record. There appears to be no evidence in the record as to back pains anywhere near the time of the accident or as to connection between the ten-year-old pains mentioned by Mrs. Smith and plaintiff's alleged sufferings and disabilities following the accident. As to plaintiff's "frailty", Hamlet mentioned that quality as being, even in his time, characteristic of all women, and while the plaintiff—to judge by Mrs. Blake's records of her excuses for absenteeism—might have had a bit more than her share, we cannot give it any more significance than we attribute to Mrs. Blake's notation about plaintiff's "bad health". Incidentally, most of the "frailty" evidence on which defendant seems to rely is that of Mrs. Smith, relating to circumstances some ten years previous, and being largely to the effect that plaintiff simply was not sturdy, though she was strong enough to look after a crippled husband and do their cooking and housework.

Defendant's testimony to the effect that plaintiff appeared to be all right after the accident can with difficulty be reasoned into evidence that her alleged pain and disability after the accident was due in part to infirmities other than the accident. The witnesses did not merely say that plaintiff was the same after the accident as before; they said she was the same well woman as before. The evidence merely controverted plaintiff's claim of injury from the accident. The real effect of all the testimony above referred to is to portray plaintiff as something of a sypochondriac or malingerer and accordingly to reduce the gravity of her alleged troubles flowing from the accident. It is rather persuasive to this effect and as indicating an excessive

award of damages, but those matters are not involved here. The testimony was not such as to require the special instruction here in issue, and with the damage issue as submitted, we think the jury was adequately advised as to the matter of restricting damages to pain and disability due only to the accident.

■ While the foregoing disposes of the only point on which the writ was granted, we will briefly discuss also petitioner's complaint of the trial court's refusal to send out with the jury in their retirement two photographs of the street intersection where the accident occurred. The pictures were introduced by petitioner as exhibits over the plaintiff's objection that they showed a stop sign against the traffic stream in which plaintiff was proceeding, the sign not being at the intersection unitl after the accident occurred. When the jury had retired, petitioner's counsel moved the court to send the exhibits out, to which plaintiff's council objected, and the court refused the motion.

The applicable rule is No. 281, Texas R. C. P., which comes verbatim from old Art. 2193, R. C. S., and provides, among other things, that "The Jury may take with them in their retirement * * * any written evidence. * * * Where part only of a paper has been read in evidence, the jury shall not take the same with them, unless the part so read to them is detached from that which is excluded."

The Court of Civil Appeals considered the error, if any, harmless, since the photographs were merely cumulative of other evidence in the record regarding the "blind" character and other aspects of the intersection, and doubted that the pictures were admissible in any event so as to constitute error.

Assuming the photographs to be admissible, as they doubtless were in the light of the explanations about the stop sign made to the jury upon their admission and under authority of Dallas Ry. & Terminal Co. v. Durkee, Tex. Civ. App., 193 S. W. (2d) 222, 229, writ refused, n. r. e., and further assuming that, as the Durkee case doubtless correctly held, the mere absence of a request from the jury itself does not justify refusing a request from a party that the pictures be sent out, nor by itself render the error of such refusal harmless, we nevertheless agree with the Court of Civil Appeals that the pictures in the instant case were merely cumulative evidence of substantially undispted facts, and hold that at least under these circumstances, including the circumstance that the jury did not ask for them, the error, though truly error, was harmless.

Since we find no reversible error in the disposition made by the Court of Civil Appeals of petitioner's remaining points, the judgment of that court affirming the judgment of trial court is itself affirmed.

Opinion delivered December 1, 1948.

Rehearing overruled January 12, 1949.