**TRANSPORT INSURANCE COMPANY,**
Appellant,

v.

**M. C. BURDITT, Appellee.**

No. 3255.

Court of Civil Appeals of Texas.

Eastland.

Sept. 28, 1956.

Rawlings, Sayers, Scurlock & Eidson, Fort Worth, for appellant.

Pat Beene, Snyder, Hawkins & Dean, Breckenridge, for appellee.

GRISSOM, Chief Justice.

This is a workmen's compensation case. Burditt sued the insurer of Merchant's Fast Motor Lines, Inc., to recover for total and permanent disability alleged to have been caused by an injury suffered on or about April 6, 1955, while working for Merchant's. Burditt alleged that while lifting a heavy pipe his foot slipped and he sustained serious injury to his back and spine and a hernia on his left side. Burditt further alleged that prior to said injury he was able to do hard manual labor; that, so far as he knew, he did not have any abnormal condition but that if he did it caused no disability. He obtained a judgment for total permanent incapacity and the insurer has appealed.

The jury found that (1) Burditt sustained an accidental injury on or about April 6, 1955, (2) while working as an employee of Merchant's (3) in the course of his employ-

ment and that (4) said injury caused a hernia on his left side (6) which did not exist in any degree prior to said injury; that (8) Burditt sustained total incapacity as a natural result of said injury and that (8–A) said injury was a producing cause of his total disability which (9) began on or about April 6, 1955, and (10) will be permanent. The jury also found, among other things, that (18) Burditt's incapacity after April 6, 1955, was not contributed to in any degree by a hernia, "if any", on his right side which he suffered on October 3, 1953.

Appellant's first eight points assert that the judgment should be reversed because of the closing argument of Burditt's counsel. Said entire argument is set out in a bill of exception. Said points assert error in making different portions of said argument.

The first point complains of the following argument:

"Now it is pretty easy for you, Mr. Brandenberger, to work a man until he has gotten old, until he has become old. It has been said: 'One day older and deeper in debt, 16 tons.' In this case this man is 16 ton today. It is a comfortable feeling to be employed by some big company who employs some 600 people, which represents some 25 or hundred people, Mr. Burditt, but when you become useless and we can use you no longer because you were careless in handling your work, we will have to fire you and discard you like a pair of old shoes, because you are an old man. You have served your purpose with us. You have been a faithful old horse, but we need you no longer."

Appellant says this argument was not based on any evidence and was not a reasonable inference to be drawn from the evidence; that it was an appeal to passion and prejudice, was an effort to create the impression that two rich and powerful corporations were seeking to take advantage of a poor, helpless old man and that it compared the size and wealth of plaintiff and defendant and sought a verdict for that reason. This argument was not objected to except in a motion for a new trial.

The argument complained of in the second point is as follows:

"Now, they jump on us about our hernia of 1953. We have done everything in the world to try to explain that to reasonable people, but we are not confronted or opposed by reasonable people, because there is a dollar mark between us, a dollar mark, you understand, to defeat the solemn agreement that was entered into, between the company and an insurance company; for the benefit of a man who had labored and toiled to make them some money. But we don't find that in this company. We find a company and the insurance company one and the same, and we find instead of appreciation for your loyalty, Mr. Burditt, and your hard work and efforts in their behalf a combination that will beat that which they said they would provide for you, and what was that? A guarantee against the day when you couldn't work. But did this company live up to that guarantee. No, they did not."

This portion of the argument was not objected to at the time it was made but after conclusion of the argument that part of said argument wherein plaintiff's counsel, in the language of appellant's objection, "stated in effect that under our contract the defendant had guaranteed the plaintiff against the day he would become unable to work" was objected to in the following language:

"I want to except to that part of the closing argument made by Mr. Pat Beene wherein he stated, in effect, that under our contract the defendant had guaranteed the plaintiff against the day he would become unable to work."

Said objection was then sustained and, without a request therefor, the court in-

structed the jury not to consider it for any purpose.

The argument complained of in the third point is as follows:

"I wish that had been my client to have had the ability of a two hundred and fifty dollar doctor, a doctor that wants to swear away the disabilities of a man that had worked 7 or 8 years for a company, for an ungrateful company."

The argument complained of in the fourth point was:

"Now, issue number one, did he receive an injury? I don't believe there is any question but what he did. Did he receive it on or about April 6, 1955, or did he receive it on the 8th? That is all that you are concerned with. It could have been within a month of that time as far as the pleadings are concerned."

The argument complained of in the fifth point was:

"Now, these first eight issues have got to be answered. No, the first seven have got to be answered, and then No. 8, No. 16, No. 17, and No. 19. Now, No. 12, let me back up there just a minute. The first eight issues have got to be answered, we contend, and after that issue No. 12, issue No. 16, issue No. 17, issue No. 18, issue No. 19 are the key issues and need to be answered, and those in between you do not have to answer."

The argument complained of in the sixth point was:

"We are entitled to money for the loss of earning capacity, and that alone. The issue in this case is this man able today to go out in the open market and compete with other laboring men and obtain and retain employment. That is the question. What does the word obtain mean? It means to get and re-

tain means to keep. This is the sole question for you people to answer, and when you have answered that you will give Mr. Burditt a judgment."

The argument complained of in the seventh point was:

"He did receive an injury. He said he did. Mr. Blakeley said he did. He was there and saw him. They want to jump on him about violating the law. Whose law, Mr. Scurlock? It's the insurance company's law, that's who. It wasn't against the laws of the State of Texas. Mr. Blakeley said: 'I rode with him.' He says: 'Not only did I have permission but the superintendent saw me. That's a courtesy extended to all ex-drivers.' Certainly they weren't collecting money to carry passengers for hire."

The argument complained of in points 1, 3, 4, 5, and 6 were not objected to except in a motion for a new trial. The argument complained of in the seventh point was not objected to at the time it was made. However, at the close of the argument that part of the argument wherein claimant's counsel, in the language of appellant's objection, "stated to the jury that it was not in violation of any penal statute in this State and he further stated that it was a courtesy extended to all ex-drivers," was objected to in the following language:

"I further want to except to that part of Mr. Beene's Argument in connection with the conduct on the part of the plaintiff Burditt in transporting the witness Blakeley as a passenger. He stated to the jury that it was not in violation of any penal statute in this State and he further stated that it was a courtesy extended to all ex-drivers."

The court then sustained said objection and, without a request to do so, instructed the jury not to consider it for any purpose. Only the argument complained of in the second and seventh points was ever objected to prior to filing a motion for a new

trial and the only objections made to the argument set out in points 2 and 7 were those heretofore quoted. But appellant contends the portions of the argument set out in said points were so prejudicial and inflammatory that the harmful effect could not have been cured by an instruction.

Appellant's eighth point is that the cumulative effect of all the arguments set out in the first seven points was such that the harmful effect thereof could not have been removed by an instruction.

Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856, 858, was reversed, among other things, because the argument implied that two important witnesses for the insurer were not to be believed simply because they were Negroes, because the argument constituted an appeal to racial prejudice and the reference to said witnesses as "yellow nigs" was a reflection on their ancestry, implying they were the product of miscegenation, a crime. However, the general rule applicable here was clearly stated in the opinion by Judge Calvert as follows:

> "Generally speaking, to entitle one to a new trial because of improper argument of counsel for the opposing party it must be shown that objection was made and overruled at the very time the argument was made. Texas & N. O. Ry. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264, 266; Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197, 200. The rule is a sound one. The basis for it is that offending counsel and the trial court should be afforded an opportunity to eliminate, if possible, the prejudice that may result from the argument—counsel by retraction and the court by instruction. As the Court of Civil Appeals correctly observed in this case, ordinarily a litigant will not be permitted to lie in wait, taking a chance on a favorable verdict and, being disappointed, complain of improper argument for the first time in a motion for a new trial.

It is only when the probable harm or the resulting prejudice cannot be eliminated or 'cured' by retraction or instruction that a new trial will be awarded in the absence of timely objection. Texas Co. v. Gibson, 131 Tex. 598, 116 S.W.2d 686; Wade v. Texas Employers' Ins. Ass'n, supra.

> "As is pointed out in the Wade case, argument which is improper only because its nature is calculated to inflame the minds and arouse the passion of prejudice of jurors is usually regarded as being of the 'curable' type. 244 S.W.2d 200–201. See also Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054. But this is by no means an invariable and unbending rule. Basanez v. Union Bus Lines, Tex.Civ.App., 132 S.W.2d 432, no writ history (appeal to national or racial prejudice). This Court has often reversed judgments because counsel used the medium of argument for getting before the jury new or different evidence, even though objection was not timely made. Floyd v. Fidelity Union Cas. Co., Tex.Com.App., 24 S.W.2d 363, rehearing denied, Tex.Com. App., 39 S.W.2d 1091; Robbins v. Wynne, Tex.Com.App., 44 S.W.2d 946. What matters it that the argument is of a particular type or falls into a particular category? The true test is the degree of prejudice flowing from the argument—whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict. Rules 434 and 503, Texas Rules of Civil Procedure."

In Walker v. Texas Employers' Ins. Ass'n, Tex., 291 S.W.2d 298, 302, our Supreme Court held, in effect, that it must be presumed that a jury would have obeyed the instruction of the trial judge to disregard a statement of a witness. The same

rule should apply to argument. It held that argument of counsel which is improper only because it is calculated to arouse prejudice is usually regarded as "curable". It further held that a reversal may not be predicated upon a simple showing that error occurred and that the jury returned a verdict favorable to the party the error was reasonably calculated to help, but that before an error will cause a reversal the appellate court must be satisfied that the error complained of was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, and that this is to be determined from an examination of the entire record.

In Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197, 201, our Supreme Court held that a claimant's closing argument in a workmen's compensation case, containing references to what his stepson and friend attempted to testify concerning deceased's post accident statements and to the fact that the insurer had not offered the testimony of any of deceased's fellow workmen, except the leader, was not so prejudicial that its harmful effect, if any, could not have been cured, and therefore the alleged error was waived by failure to object to it at the time it was made.

Referring to the argument complained of in the first point, the evidence showed that claimant had worked for Merchant's for 7 or 8 years. Merchant's manager testified, in effect, that Merchant's was a big company and had about 600 employees. The argument that Merchant's could not use Burditt longer "because you were careless in handling your work" was in accord with the testimony of Merchant's manager and appellant's contention and contrary to claimant's contention that he was fired because of his injury. The only argument complained of in the second point was, in the language of appellant, that part "wherein he stated, in effect, that under our contract the defendant had guaranteed the plaintiff against the day that he would become unable to work." This was the only part objected to and the only objection made. It was sustained when it was made after the close of the argument and the court then instructed the jury not to consider it for any purpose. Considering the argument as a whole, we doubt that it was subject to objection. If claimant's counsel meant that his employer and its insurer had agreed to provide for him against the day when he couldn't work on account of an accident sustained in the course of his employment it was not improper. In the course of the closing argument claimant's counsel had told the jury that claimant was entitled to be paid only for loss of earning capacity, as shown by appellant's sixth point. The argument complained of in the third point should not have been made but we doubt that it had any effect on the jury. It certainly gave them no information that they did not already have. Appellant's medical witness had testified that he was going to charge appellant $250 a day. This doctor testified from his records that claimant had been to see him twice, the first time being in October, 1954, and that he then had a hernia on both his left and right sides. His record of these two visits, the second visit being after April, 1955, is so confusing as to leave in doubt his interpretation on the witness stand of Burditt's "clinic card". Claimant testified that on the occasion of his first visit to this doctor on October 26, 1954, he had some sores on his neck and had been vomiting; that the doctor made no examination of anything other than his neck and had no opportunity to see a hernia, if he then had one or more. The concluding part of said extract from the argument was not an unreasonable deduction from the evidence. The argument complained of in the fourth point is not necessarily subject to appellant's interpretation that it had the effect of informing the jury that it made no difference whether claimant sustained the injury "on the occasion in question" and that the answer should be the same if the injury was sustained on an entirely different occasion. Claimant's testimony and that of a witness

who said he was present indicate that the time that claimant contends he received his injury by lifting a pipe was early in the morning of April 7, 1955. There was uncertainty as to the exact date. He was fired on April 8th. Appellant contended on the trial that Burditt didn't deliver any pipe at Breckenridge and that he didn't sustain an injury on April 6th or 7th, or about that time. They contended that the hernia on the right side was suffered in 1953, when he suffered a "strain" while in the course of his employment by Merchant's. The evidence indicates, if it does not show, that he did suffer a rupture on the right side in 1953 which did not become immediately apparent. Claimant says that he then went to the doctor that Merchant's sent him to, who assured him that he only had a strain; that he resumed his work for Merchant's and continued to work every day thereafter, except holidays, until he was allegedly injured on April 6, 1955. The argument complained of in the fifth point requires some discussion. It was not objected to and, as in all of the first seven points except the second and seventh, it is contended that despite the fact that it was never objected to until the filing of a motion for a new trial that it was so prejudicial and inflammatory that the harmful effect could not have been removed by an objection and instruction by court to disregard it. Just why it was so prejudicial is not pointed out in the brief and, since no objection was made, it is difficult to understand just what appellant concludes was so harmful. Let us assume that the complaint is based on a statement that the issues between 12 and 16 need not be answered. 12-A inquired whether the injury was a producing cause of "such" partial disability. In answer to issue 12 the jury found that claimant did not sustain "partial" incapacity and the jury had been instructed to answer 12-A only in the event it answered issue 12 that claimant's disability was "partial". The court instructed the jury not to answer said issues if it answered the preceding issues as it did. If appellant's com-

plaint is that claimant's counsel told the jury it did not have to answer the issues between 8 and 12 this could not have hurt appellant. The jury did answer all of them except eleven, which was conditionally submitted. The jury answered issue 8-A that the injury of April, 1955, was a producing cause of total disability; (9) that total incapacity began on or about April 6, 1955, and (10) would be permanent. If the jury had done as claimant's counsel suggested Burditt could not have obtained the judgment appealed from. If such argument must be construed as it is interpreted by appellant, it tended to be harmful to the claimant but not to appellant. We think there is little wrong with the argument challenged in the sixth point. Claimant's counsel correctly stated that he was entitled to be paid only for loss of earning capacity. This argument was not objected to and the only statement under this point in the brief is that it was prejudicial and inflammatory and informed the jury of the effect of its answers. The jury knew that the issue referred to was not the "sole" question for its determination and counsel's conclusion that "when you have answered that you will give Mr. Burditt a judgment" was not so prejudicial that the error could not have been cured if an objection had been made and sustained by the trial court and the jury instructed not to consider it and counsel had explained or retracted the statement. If the jury had interpreted counsel's statement as appellant does and had answered only the question as to the ability of Burditt to obtain and retain employment Burditt could not have obtained a judgment. Considering the portions of the argument complained of in the light of the general rules that usually error in argument is "curable" by instruction by the court and retraction or explanation by counsel, or both; the presumption that the jury will observe such instructions and that an objection not timely made is waived, we have carefully considered the entire record and have finally concluded that we should not hold that the errors asserted were reasonably cal-

culated to cause and probably did cause rendition of an improper judgment.

■ Appellant's ninth point is that the court erred in overruling its motion for a new trial because the jury's answer to issue 19, that the hernia on the right side, presumably sustained in 1953, did not contribute to claimant's incapacity after April 6, 1955, is so contrary to the overwhelming weight and preponderance of the evidence that it is manifestly wrong. There was evidence from which the jury could have concluded that claimant sustained a hernia on his right side on October 3, 1953, while working for Merchant's and that this hernia did contribute to his incapacity after April 6, 1955. But there was testimony that after claimant had suffered an injury on October 3, 1953, that the doctor that Merchant's sent him to told Burditt that he only had a strain; that he suffered no disability; that he promptly returned to work for Merchant's, handling heavy freight, and continued to work every day, except holidays, until his alleged injury on about April 6, 1955. Claimant testified that if he had a rupture as a result of the "strain" on October 3, 1953, he didn't know it; that sometime afterward he did have a lump on his right side about the size of a dime or nickel; that he had "a little trouble" with it but it did not keep him from working every day at hard manual labor. Claimant testified that he did not know he had a hernia on his right side until after the accident on or about April 6, 1955; that his back had never hurt before the injury in April, 1955. He testified, in effect, that when he reached Merchant's headquarters after this injury he reported the accident to his employer and was fired because of his injury. Merchant's manager testified, in effect, that he was fired because he did not properly handle the freight. It was certainly not conclusively shown that a prior hernia on his right side contributed to Burditt's incapacity after April 6, 1955. See Texas Employers' Ins. Ass'n v. Sevier, Tex. Civ.App., 279 S.W.2d 473, 476, (RNRE),

and Dallas Ry. & Terminal Co. v. Orr, 147 Tex. 383, 215 S.W.2d 862, 866.

We think error is not shown in overruling appellant's objection to the hypothetical question propounded to claimant's medical witness. See Maryland Casualty Co. v. Allen, Tex.Civ.App., 22 S.W.2d 329, 331; Lumbermen's Lloyd v. Loper, 153 Tex. 404, 269 S.W.2d 367, 369; McCormick on Evidence, 29, 30. The judgment is affirmed.