## MISSOURI PACIFIC RAILROAD COMPANY, Appellant,

v.

### M. D. HARKINS, Appellee.

No. 3627.

Court of Civil Appeals of Texas.

Eastland.

May 19, 1961.

Rehearing Denied June 2, 1961.

Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, for appellant.

Rosson & McGown, San Antonio, George L. Schmidt, Houston, for appellee.

GRISSOM, Chief Justice.

M. D. Harkins sued the Missouri Pacific Railroad Company under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for damages caused by two injuries. The verdict and judgment were for Harkins and the railroad company has appealed.

Harkins alleged he had long been a conductor on defendant's freight trains when, on August 31, 1958, the train on which he was working parted because of a defective coupling and a knuckle which was thrown from the engine to the ground had to be replaced; that in lifting the knuckle he received a severe strain causing a double hernia which disabled him for a long time, required an operation and caused severe pain and considerable expense. He further alleged that on January 8, 1959, a caboose in which he was riding as a conductor turned over, causing a severe injury to his back and a herniated disc which resulted in great pain, expense and incapacity; that said injury would require the removal of the ruptured disc and probably a fusion, for all of which he sought damages. The railroad company admitted it was liable to Harkins for the damages sustained in the first accident, but denied that plaintiff was damaged to the extent of $10,000, as he alleged. With reference to the second accident, the railroad company admitted it was liable for any damages suffered, but it denied that Harkins suffered either a "serious" back injury or that he had a ruptured disc. It alleged that, if Harkins was disabled, his disability was caused by a disease, illness or condition which existed prior to the injury.

A jury found that $1,500 would compensate Harkins for the injury sustained in the first accident. This finding is not assailed. To issue 2, which inquired what amount of money would compensate Harkins for the second injury "directly caused by the overturning of the caboose on January 8, 1959", the jury answered $60,780. In answer to issue 3 the jury found that $870 would compensate Harkins for reasonable and necessary medical and hospital expenses incurred from the date of the second accident to the time of the trial as a direct result of the overturning of the caboose. In answer to issue 4 the jury found that $2,500 would reasonably compensate Harkins for reasonable and necessary medical and hospital expenses which he would incur in the future as a direct result of the overturning of the caboose.

Appellant's first point is that the court erred in refusing to submit its requested issues 4 and 6, inquiring (4) whether Harkins' present disability is not the result of some injury, disease or condition which existed prior to the second accident and (6) whether protrusion of the disc, if any, in Harkins' back was "not the result of degeneration of such disc as the result of the normal aging process * * *." In support of appellant's contention that refusal to submit said requested issues constitutes reversible error appellant cites Texas Employers' Insurance Ass'n v. Wright, Tex.Civ.App., 196 S.W.2d 837 (Ref. N.R. E.). In that case a doctor testified that Wright was afflicted with a totally disabling hernia and a 50% disabling arthritic condition. It was undisputed that said conditions were not due to the accident that was the basis of the suit. An issue was submitted inquiring whether Wright's incapacity was due solely to hernia and another inquired whether his disability was due solely to arthritis. It was held that the

trial court erred in refusing to submit a requested issue inquiring whether a combination of hernia and arthritis was the sole cause of Wright's incapacity. The court said that a finding on said requested issue favorable to the insurer would have eliminated the injury as a cause of Wright's incapacity and defeated recovery.

In submitting issue 2, which asked what amount of money would compensate Harkins for the injury he sustained in the overturning of the caboose, the court, after instructing the jury what they might consider in determining the amount of damages caused by the second accident, instructed the jury as follows:

"In estimating such damages, if any, you must exclude from your estimate any compensation for physical impairment, if any, and physical and mental pain and suffering, if any, of the said Plaintiff, M. D. Harkins, which may be due solely or partly to physical and mental ailments or conditions, if any, which he may have had prior to the overturning of the caboose in question; but if you find from a preponderance of the evidence that the overturning of the caboose in question has aggravated any physical and mental ailments or conditions, if any, which the plaintiff, M. D. Harkins, may have had prior to the time of the overturning of the said caboose, then you may consider in your estimate an amount for such aggravation, if any; and you are further instructed in estimating such damages, if any, and in answering this question, you must exclude from your estimate any compensation for physical and mental pain and suffering, if any, of the said M. D. Harkins, which may be due solely or partly to the injuries, if any sustained by him on August 31, 1958, the date of the lifting of the knuckle onto the engine, and for which you have already given your estimate of his damages, if any, in your answer to Question No. 1."

The court did not err in refusing to submit requested issues 4 and 6 because they were evidentiary. They were not ultimate issues and the elements of defense included therein were substantially excluded by the instructions given in connection with the issues submitted. The second accident occurred when the caboose turned over on January 8, 1959. The record shows conclusively that his back was injured in that accident. There was a serious contest as to how badly it was injured and whether he had a ruptured disc. If there had been any question that Harkins suffered some injury from the turning over of the caboose, such an issue should have been submitted. No such issue was requested by appellant and it made no objections to the charge because it was not submitted. In Kenney v. La Grone, Tex.Com.App., 127 Tex. 539, 93 S.W.2d 397, in which the opinion was adopted by the Supreme Court, appellant contended the court erred in failing to submit certain issues requested by him. Mrs. LaGrone had sued Dr. Kenney for damages allegedly caused by his negligence in burning her with X-rays while treating her for eczema. Appellant requested issues inquiring whether Mrs. La Grone's condition was the result of eczema and whether her condition was the result of some disease. The court said it was obvious that the requested issues were not correct; that if they had been submitted and answered favorably to the defendant they would not have constituted a defense; that if her condition at the time of the trial was due to eczema, nevertheless, she could have suffered damages as a result of X-ray burns. This holding is directly in point here. Even though Harkins' incapacity at the time of the trial was due to some prior injury or disease, nevertheless, he could have had pain and suffering and expense as a result of the second injury.

Appellant made no objection to the instruction given in connection with the issues submitted whereby the jury was told to exclude from their consideration in determining the amount of compensation for

the second injury all physical impairments, pain and suffering due solely or in part to prior injury, disease or condition. Whether Harkins' incapacity at the time of the trial was the result of some prior injury, disease or condition was not an ultimate issue. If it had been submitted and answered what effect could it have had in determining what judgment should be rendered? Suppose the court had submitted requested issue 6 and the jury had found that protrusion of a disc in Harkins' back was caused by degeneration of the disc by the normal aging process, what effect would that have in determining the judgment to be rendered? If Harkins suffered an injury to his back as a proximate result of appellant's negligence, a finding that protrusion of the disc was the result of degeneration caused by the normal aging process would not have deprived him of a judgment for the injury suffered regardless of whether it caused a disc protrusion. See Armour & Co. v. Tomlin, Tex.Civ.App., 42 S.W.2d 634; Tex.Com.App., 60 S.W.2d 204. No issue was requested inquiring whether something for which the railroad was not liable was the sole cause of his injury, or of his pain, suffering and expenses. To illustrate, had both requested issues been submitted and answered favorably to appellant that would not have defeated a recovery for the pain, suffering and expenses resulting from his injury. If Harkins suffered a back injury in the second accident as a proximate result of appellant's negligence which caused pain and suffering and expense he was entitled to recover therefor, regardless of whether or not he had a protruded disc which was caused by degeneration. We think the matters which appellant had the right to have the jury exclude from their consideration in determining the amount of damages to which Harkins was entitled as a result of the caboose turning over were properly excluded by the court's instruction. Dallas Railway & Terminal Co. v. Ector, Tex.Com.App., 131 Tex. 505, 116 S.W.2d 683, 685, 686; Dallas Railway & Terminal Co. v. Orr, 147 Tex. 383, 215 S.W. 2d 862, 864; Yellow Cab & Baggage Co. v. Green, 154 Tex. 330, 277 S.W.2d 92; Texas Coca-Cola Bottling Co. v. Lovejoy, Tex.Civ. App., 138 S.W.2d 254 (Writ Ref.); Thompson v. Barnes, Tex.Civ.App., 236 S.W.2d 656, 661.

■ Appellant's third point is that the court erred in refusing to admit in evidence the death certificate of appellee's brother which showed that his brother's death at 37 was caused by a coronary occlusion. Appellee had suffered a coronary occlusion nine years before the second accident, when he was about 40. Said recitals in the death certificate, by virtue of the provisions of Article 4477, Rule 54a, constitute prima facie evidence of "the facts therein stated". Appellant offered said certificate for the purpose of showing that appellee's life expectancy was less than the time fixed by the actuaries. In an attempt to show relevancy and materiality of said death certificate, appellant, in preparing his bill, examined specialists who had testified for both sides. The court had permitted appellant to prove that appellee's brother died at the age of 37, but, for what we deem to be a wrong reason, sustained appellee's objection and did not let appellant introduce the statement in the certificate of the cause of the brother's death. Said doctors testified, in effect, that the information in the death certificate, that which was admitted and that which was excluded, would have been of some importance to them in making a diagnosis of appellee's trouble and would have helped them determine more quickly whether he had a coronary occlusion. Although they were repeatedly asked whether such information would have been of any importance to them "in making their diagnosis and in testifying before the jury", they did not testify that knowledge of the cause of the brother's death would affect their opinion of appellee's life expectancy. Dr. Jacobs testified that the statements in the certificate would have been of importance to him only in observing appellee to see whether he might develop a coronary occlusion; that

"It isn't necessarily any measure of his longevity. It is just a matter of whether he may have a heart attack or myocardial infarction or something of the sort. That is the only importance to me medically."

Dr. Block's testimony was to the same effect. He said that such information might have been helpful to him if he had been called upon to quickly diagnose appellee's case when he had a coronary occlusion. He did testify:

"Q. And that would have an important bearing on your diagnosis and your testimony? A. Correct."

But he did not testify that knowledge that the cause of the brother's death was a heart attack would have materially affected his estimate of appellee's life expectancy. We conclude that the portion of the death certificate rejected was not material; that it would not have tended to prove any issue in the case and that the court did not err in refusing to admit it. Dallas Ry. & Terminal Co. v. Oehler, 156 Tex. 488, 296 S.W.2d 757, 759. However, if it had been technically admissible, after a careful study of all the relevant testimony, we are compelled to conclude that it would not have affected the verdict and was not reasonably calculated to cause the rendition of an improper judgment. Texas Rules. of Civil Procedure, rule 434.

Appellant's fourth point is that the court erred in submitting issue 4 because there was no evidence that Harkins would incur medical expenses in the future. This point is overruled because an examination of the testimony discloses the contrary.

Appellant's second point is that the court erred in refusing requested issues inquiring whether appellee was so disabled that he could not perform the duties of a railroad conductor or brakeman.

"There is no rule that requires that damages be determined with reference to the particular calling in which one was engaged at the time of his injury." 17 Tex.Jur.2d, page 179.

In Wichita Valley Ry. Co. v. Williams, Tex. Civ.App., 6 S.W.2d 439, 442 (Writ Ref.), Judge Hickman, speaking for this court, said:

"There is no rule making the particular calling in which a person is engaged at the time of his injury the standard of his damages."

We think it is evident that said requested issues were not ultimate issues, that they were evidentiary and, if submitted and answered, could not have been the basis of a judgment. The court has the duty to submit only ultimate issues. R.C.P., Rules 1 and 279.

We have carefully considered all of appellant's points. We think reversible error is not shown. The judgment is affirmed.